**In the Matter of Zoia HORN, Appellant.**
**No. 72–1160.**

United States Court of Appeals,
Third Circuit. ·

Argued March 8, 1972.

Decided March 14, 1972.

Allen D. Black, Harold E. Kohn, P. A., Philadelphia, Pa., for appellant.

Robert L. Keuch, Internal Security Div., Dept. of Justice, Washington, D. C., for appellee.

Before VAN DUSEN, ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

Zoia Horn appeals from an order of the District Court holding her ·in civil contempt pursuant to 28 U.S.C. § 1826 for refusing to testify in the trial of United States v. Ahmad, et al., Cr. No. 14,950, M.D.Pa., after having been

granted immunity from prosecution in accordance with 18 U.S.C. § 2514.[1]

■ In January of 1971 Mrs. Horn had been called to testify before a Federal Grand Jury which subsequently returned numerous indictments in United States v. Ahmad, *supra.* See *infra* n. 10. She testified at that time after having been granted immunity. On January 12, 1972, she was subpoenaed by the Government to testify in the trial of that case and pursuant to 18 U.S.C. § 2518(10) (a) [2] moved to suppress on the ground that her subpoena and the resulting questioning represented the product of unlawful wiretapping or electronic surveillance. In response, Deputy Assistant Attorney General A. William Olson filed an affidavit (the "Olson Affidavit" [3]) dated January 6, 1972, de-

1. § 2514. Immunity of witnesses.
"Whenever in the judgment of a United States Attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of this chapter or any of the offenses enumerated in section 2516, or any conspiracy to violate this chapter or any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."

2. 18 U.S.C. § 2518(10) (a) reads:
"Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted · wire or oral communication, or evidence derived therefrom, on the grounds that—

"(i) the communication was unlawfully intercepted;
"(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
"(iii) the interception was not made in conformity with the order of authorization or approval.
Such motion shall be made before the trial, hearing or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice."

3. "A. WILLIAM OLSON, being duly sworn, deposes and says:
"1. That he is a Deputy Assistant Attorney General, Internal Security Division, Department of Justice;
"2. That he caused an inquiry to be made with the appropriate Federal Government agencies to determine if there has been any electronic surveillance of the conversations of Zoia Horn or any electronic surveillance of conversations occurring on her premises, whether or not she was present or participated in those conversations;
"3. That based upon the results of such inquiry he hereby states that there has been no electronic surveillance of any conversations of Zoia Horn and that there has been no electronic surveillance of any conversations occurring on her premises.
s/ A. William Olson

A. WILLIAM OLSON
Deputy Assistant Attorney General

nying any surveillance activities against Mrs. Horn. Counsel for Mrs. Horn moved to strike the affidavit as legally insufficient. The District Court, however, after oral argument, but without holding an evidentiary hearing, denied counsel's various motions.[4] When subsequently called to testify on February 23, Mrs. Horn, after answering a number of preliminary questions, refused to testify on Fifth Amendment grounds. The Government applied for a § 2514 immunity order which was granted by the District Court after a hearing. On February 28 the Government called Mrs. Horn to testify on its behalf. She refused to answer any questions, citing conscience[5] as well as her desire to obtain appellate review of the District Court's orders.[6] The District Court warned appellant that her refusal to testify in light of the § 2514 immunity order would constitute civil contempt and allowed her four days to reconsider her position. On March 3 appellant once again refused to testify and was committed to the custody of the Marshal "until the end of the trial of United States v. Ahmad, et al., *supra,* or until such time as she purges herself of this contempt." This appeal followed.

In urging remand, counsel for Mrs. Horn raises, *inter alia,* the following issues;

1) Whether the District Court erred in denying appellant's § 2518(10) (a) motion to suppress without an evidentiary hearing; and

2) Whether the Government's immunity application was legally sufficient and whether the District Court erred in granting that application without making a factual inquiry into its sufficiency under 18 U.S.C. § 2514.

When a witness files a petition to suppress pursuant to 18 U.S.C. § 2518(10) (a), the Government is obligated to "affirm or deny the occurrence of the unlawful act." 18 U.S.C. § 3504(a) (1). It may do so by affidavit. In the Matter of Grumbles, 453 F.2d 119 (3d Cir. 1971). If the affidavit is sufficient on its face and the petitioner offers nothing to indicate that the affidavit is false or defective, the trial court has the pow-

---

"Subscribed and sworn to before me this *6th* date of January 1972."

The Olson Affidavit was sworn out on January 6, 1972, six days before Mrs. Horn was subpoenaed to testify for the Government. This is apparently the "standard" Government affidavit in § 2518(10) (a) cases and is identical to seven others also sworn out on that date. It has been used in proceedings in other circuits as well. See, for example, In re Marx, 451 F.2d 466, 467 n. 2 (1st Cir. 1971).

4. Included were a Petition to Suppress, a Motion to Strike and alternatively a Motion for an Evidentiary Hearing.

5. Mrs. Horn stated in part:
   "I cannot in good conscience lend myself to this black charade. . . .
   "And my conscience is quite another matter and I think that spying in libraries and homes and in universities is something that I protest and I cannot therefore testify."
   The defense attorneys, as well as the Government attorney, made clear at the February 28, 1972 hearing that they wished Mrs. Horn to testify, using this language at pages 105–106:

"MR. MENAKER: Your Honor, I would like to put a statement on the record at this time. We learned during the lunch hour that Mrs. Horn had intended not to testify when called this afternoon. The Defendants and the Defense Attorneys unanimously requested that I inform Mr. Black that it was their preference that she testify, and I think Mr. Black will say I did communicate that to him.

"MR. BLACK: Yes. In fact, on several occasions, at least on half a dozen occasions, the Defense has asked me to urge Mrs. Horn to testify and I have done so.

"MR. MENAKER: Her refusal is despite the wishes of the Defendants." Subsequently the defense agreed to stipulate that the witness would testify to certain matters but the government declined to so stipulate since it wishes to question her on additional items. (Transcript of March 3, 1972).

6. The District Court's denial of Mrs. Horn's earlier motions were not appealable. In Matter of Rom, 459 F.2d 15 (3d Cir., 1972).

er to deny the petition. *Grumbles, supra*, at 122. Although our decision in *Grumbles* certainly does not foreclose an evidentiary hearing where appropriate, we held in that case that since the petitioners had not presented "any evidence demonstrating that these representations by the Government [were] false," *id.* at 122, a hearing was not warranted. In so holding we cited In re Idella Marx, 451 F.2d 466 (1st Cir. 1971) and Russo v. United States, 404 U.S. 1209, 92 S.Ct. 4, 30 L.Ed.2d 13 (Douglas, Circuit Justice, 1971). Appellant here claims that *Grumbles* does not apply to the instant case because the Government's affidavit denying surveillance, in addition to being based on hearsay, was identical to an affidavit concerning another witness which subsequently proved to be misleading and/or inaccurate. Appellant also contends that certain additional facts including the unavailability of her telephone records (indicating the possibility that they had been turned over to the FBI) and "unusual clicking and hollow sounds from time to time" over her telephone in Lewisburg are cumulatively sufficient indicia of illegal surveillance to warrant an evidentiary hearing. We disagree.

Although the Olson affidavit is far from a "model" either in terms of its scope or forthrightness, it is nevertheless substantially the same as the Government's affidavits denying electronic surveillance held sufficient in *Marx* and *Grumbles, supra*. The instant case, as well as *Marx* and *Grumbles*, however, makes clear that it would be desirable for the Government's affidavit to contain a more complete statement setting forth whether there had been *any* wiretapping or electronic surveillance including that which the Government considers to be legal under, inter alia, 18 U.S. C. § 2511(2) (c).[7] We believe also that the number of cases involving questions of electronic surveillance contemplated by our opinion in the *Egan* case, *supra* n. 7, 450 F.2d at 216, would be greatly reduced were the Government to indicate with some specificity which "appropriate agencies" were in fact contacted.

Finally, as to Mrs. Horn's allegations [8] concerning noises heard over her telephone lines, we do not consider such an assertion sufficiently substantial to war-

---

7. 18 U.S.C. § 2511(2) (c) states:
"It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."
An identical "Olson affidavit" represented in the case of another witness—Mary Elizabeth Sandel—"that there has been no electronic surveillance of any conversations occurring on her premises." It was subsequently discovered, however, that a Government witness had received telephone calls over Miss Sandel's telephone, which were intercepted and recorded by the Government on December 3 and 10, 1970. The Government has acknowledged that the interceptions took place, but has taken the position that since the interceptions had been consented to by one of the parties to the telephone conversation, they were not within the term "electronic surveillance" as used in the Olson affidavit and as contemplated by our decision in In re Egan, 450 F.2d 199 (3d Cir. 1971), since they were permitted by 18 U.S.C. § 2511(2) (c). *See* United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). If this is the Government's position, we see no reason why it should not be so stated in its affidavit.
In any case, it is unlikely that the omission from the Olson affidavit of the "consensual" surveillance of December 3 and 10, 1970 was intended to prejudice Miss Sandel, since the information derived from those recorded conversations was furnished to the defense. The tapes were made available on August 31, 1971, and at the defendants' request more precise information was furnished on November 22, 1971. There was, therefore, no unawareness of the surveillance omitted from the Olson affidavit.

8. The allegations in support of the motion for an evidentiary hearing contained in The Matter of Grumbles (3d Cir. 72–1013, Memorandum Order of January 25, 1972), were subscribed to by sworn affidavit. Here they are simply recounted in counsel's brief and in the unverified Motion to Strike Affidavit, etc.

rant a different result than in *Grumbles, supra.*[9] Given the particular circumstances of the case and the paucity of evidence presented by the petitioner, the District Court was correct in denying a hearing. *See* Nardone v. United States, 308 U.S. 338, 312, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

■■ Appellant's argument that the Government's immunity application was defective since it was not personally approved by the then Attorney General, John Mitchell, must also be rejected. Section 2514 requires that any application for immunity must have the "approval of the Attorney General." 18 U.S.C. § 2514, *supra* n. 1. Mrs. Horn's immunity application was requested by S. John Cottone, the United States Attorney for the Middle District of Pennsylvania with the approval of the Attorney General. It is set out in full in the margin.[10] Counsel contends that the failure of Attorney General Mitchell personally to approve and sign the authorization letter voids the entire application procedure. We cannot agree.

Here the United States Attorney for the Middle District of Pennsylvania has affirmatively represented to the District Court that his immunity application had been approved by Attorney General Mitchell. In Re Zoia Horn, M.D.Pa., Misc. —— p. 2 (Filed February 23,

9. As to the disappearance of appellant's telephone records, suffice it to say, that even if they were turned over to the FBI, this is not proof that illegal surveillance had taken place.

10. In Re )
Zoia Horn) Misc. _____
APPLICATION
"S. John Cottone, United States Attorney for the Middle District of Pennsylvania, hereby makes application for an order instructing Zoia Horn to testify and produce evidence, pursuant to the provisions of Title 18, United States Code, Section 2514, and respectfully alleges as follows:

"1. Zoia Horn was subpoenaed to appear on the *10th* day of January, 1972, before the Court in the Middle District of Pennsylvania at Harrisburg, Pennsylvania for the trial of United States of America v. Egbal [sic] Ahmad, et al., No. 14950. This trial involves violations of Title 18, United States Code, Section 1201, kidnapping; Title 18, United States Code, Section 1361, destruction of Government property; Title 18, United States Code, 844(f), destruction of Government property by means of explosives; Title 18, United States Code, Section 844(d), interstate transportation of explosives; Title 18, United States Code, Section 1791, traffic in contraband; Title 18, United States Code, Section 5861(d), possession of unregistered destructive devices; Title 18, United States Code, Section 876, mailing threatening communications; and Title 18, United States Code, Section 371, conspiracy.

"2. Zoia Horn has refused to answer questions before this Court on the grounds that the answers might tend to incriminate her.

"3. In my judgment, as United States Attorney for the Middle District of Pennsylvania, the testimony of Zoia Horn concerning the matters under inquiry and responses to the questions are necessary to the public interest of the United States.

"4. The application is made with the approval of the Honorable John Mitchell, Attorney General of the United States.

"WHEREFORE, I, S. John Cottone, United States Attorney for the Middle District of Pennsylvania, request the Court to order Zoia Horn to answer questions and to testify and produce evidence relating to the matters under inquiry, pursuant to the provisions of Title 18, United States Code, Section 2514.

s/ —————————————
S. JOHN COTTONE
United States Attorney
VERIFICATION
"I, S. John Cottone, being first duly sworn, depose and say that I am the United States Attorney for the Middle District of Pennsylvania, and that the foregoing Application is made on the basis of information officially furnished and upon the basis of such information is as I verily believe.

s/ —————————————
S. JOHN COTTONE
"Subscribed and sworn to before me on this *23rd* day of *February*, 1972.

s/ Richard P. Bowen
——————————————————
Clerk, United States District Court
Middle District of Pennsylvania"

1972). This has not been contraverted and there is no reason to consider that the facts are otherwise. Even if this were not the case we believe that the provisions of 28 U.S.C. § 510,[11] allowing the Attorney General to delegate his authority in certain cases, are applicable to the Attorney General's power to approve applications for immunity under Section 2514. *See* December 1968 Grand Jury v. United States, 420 F.2d 1201 (7th Cir. 1970), cert. denied, Domenico v. United States, 397 U.S. 1021, 90 S.Ct. 1260, 25 L.Ed.2d 531 (1971), *cf.* United States v. Robinson, No. 71–1058 (5th Cir. Jan. 12, 1972). Pursuant to 28 U.S.C. § 510, the Attorney General has delegated the approval authority to various, specified Assistant Attorneys General—including the Head of the Internal Security Division—with the limiting proviso that the Assistant Attorney General for the Criminal Division must also approve each application. 28 C.F.R. 0.175 (December 23, 1970).

The record includes an undated letter to United States Attorney Cottone from Robert C. Mardian, the Assistant Attorney General for the Internal Security Division, granting approval for the application. The letter notes that "[t]he Acting Assistant Attorney General for the Criminal Division, Henry E. Peterson, concurs with me in this matter."[12]

We have considered and reject appellant's other arguments.

The March 3, 1972, order committing appellant Zoia Horn to federal custody for the duration of the trial of United States v. Ahmad, *supra,* or until she purges herself of the contempt is affirmed.

The mandate shall issue forthwith.

ADAMS, Circuit Judge (concurring).

I concur with the result reached, but feel impelled to state separately that I consider this a close case. My conclusion in this regard is predicated primarily on three considerations: (1) the nature of the Government's affidavit, with its reliance on hearsay, and its failure specifically to foreclose the possibility that some agency had employed electronic surveillance or that the prosecutor might have the benefits of such surveillance; (2) the doubt created by the Government's affidavits in connection with Mary Sandel; and (3) the fact that the trial court had indicated that there was to be a hearing, but that the witness' counsel was apparently confused by the written notice which stated that there would be an argument—apparently before such hearing.[1]

Also, I agree with the conclusion reached with regard to the immunity ap-

---

11. 28 U.S.C. § 510. Delegation of authority.

"The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

12. "Mr. S. John Cottone
United States Attorney
Scranton, Pennsylvania
"Dear Mr. Cottone:
"This is with regard to your request to seek a grant of immunity for Zoia Horn. This request is for the purpose of enabling the Government to elicit testimony during its case in chief in the case of United States v. Egbal [sic] Ahmad, et al., No. 14950.
"Upon consideration of your request, I find that the testimony of Zoia Horn

is necessary and in the public interest. The Acting Assistant Attorney General for the Criminal Division, Henry E. Peterson, concurs with me in this matter.
"Accordingly, you are hereby authorized to seek a grant of immunity pursuant to the provisions of Title 18, United States Code, Section 2514 for Zoia Horn in the event she asserts her privilege against self-incrimination.
Sincerely,
s/ ROBERT C. MARDIAN
Assistant Attorney General"

1. "It is ordered that Tuesday, February 1, 1972, . . . be set as the time for *argument* on the Petition to Suppress filed in this matter on January 24, 1972. . . ." [Emphasis added].

plication because the United States Attorney's affidavit asserted that the Attorney General had approved it, and there is no allegation by the petitioner that he did not do so. In the context of this case, therefore, I believe there is no need to construe Section 2514.