**UNITED STATES of America**

v.

**John DOE.**

**In re Subpoena of Daniel CAHALANE.**

**Misc. No. 73–93.**

United States District Court,
E. D. Pennsylvania.

Oct. 9, 1973.

Brendan Alvey, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Louis M. Natali, Jr., Philadephia, Pa., Charles A. Glackin, Harrisburg, Pa., for defendant.

## OPINION AND ORDER

BECHTLE, District Judge.

Following a series of steps, beginning May 3, 1973, having to do with the interest of the Government in securing the testimony of Daniel Cahalane, contemnor herein, and the subsequent grant of immunity by the United States District Court for the Eastern District of Pennsylvania under 18 U.S.C. § 6002, on July 13, 1973, 361 F.Supp. 226, the contemnor was eventually taken before the United States District Court on July 26, 1973, following his refusal to testify before the Grand Jury, from which appearance the District Court entered its Order finding the contemnor in civil contempt and directing that he be imprisoned for the life of the Grand Jury or until he should comply by testifying. That contempt Order was appealed to the United States Court of Appeals for the Third Circuit and, after argument, that Court issued its Judgment Order on September 5, 1973, which affirmed the Order of contempt of the lower court, admitted contemnor to bail in the amount of $15,000 and directed that the proceedings be remanded to the District Court so that contemnor's affidavit and the Government's counter-affidavit could be filed in that order within a ten-day period which affidavits were expected to contain the extent to which electronic surveillance of contemnor's counsel may have taken place so that the District Court could thereafter determine what further course of action was appropriate in keeping with the guidelines established by the standards enunciated in the cases of In re Horn, 458 F.2d 468, 470–471 (3rd Cir. 1972) and In re Grumbles, 453 F.2d 119, 122 (3rd Cir. 1971). On September 10, 1973, contemnor filed his affidavit taken by Charles A. Glackin, Esq., and thereafter, on Monday, September 17, 1973, the United States filed its counter-affidavit. In anticipation of the Circuit Court's requirement that this Court make its determination on or before September 20, 1973, this Court furnished notice to all parties concerned on September 14, 1973, that the Court was to convene a conference in open court at which the contemnor was expected to be present, wherein the contents of the affidavits would be examined by the Court and counsel could be heard at that time in respect to their relative positions, which the Court expected to use as a guide in fulfilling its role by September 20, 1973.

Despite the fact that Charles A. Glackin, Esq. ("Glackin") was contemnor's attorney and contemnor's sole affidavit witness and had received a copy of the Judgment Order of the Circuit Court setting forth a strict fifteen-day requirement for this Court to dispose of this important matter, he apparently decided to take his vacation in Vermont and, thereby, put himself beyond the reach of the Court's notice; which was given in the customary way, as well as by telegram (n.t. 1–7).[1] Because of some very general and miscellaneous references by the contemnor's witness, Charles Glackin, in his affidavit to the underlying factual allegations of electronic surveillance of counsel, the Court felt that it was necessary, despite the inconvenience placed upon it because of Mr. Glackin's absence on vacation, to confer at length with contemnor and his counsel, Louis M. Natali, Jr., Esq. ("Natali") in order establish with as much precision as was possible the particulars in respect to the claimed improper electronic surveillance. The record of that conference in open court on September 18, 1973, has been transcribed and is part of the record in this case. The Court then ordered the contemnor to furnish a supplemental affidavit with the following information: (n.t. 49)

". . . the contemnor should file with the Court a supplemental affidavit that will support with precision the dates, times, places and numbers that were called, that the contemnor contends contain attorney-client communications between Mr. Cahalane and ei-

---

1. All references to notes of testimony are in respect to the hearing on September 18, 1973.

ther Mr. Glackin or Mr. Natali, but presumably no other attorney because on this record, he was not represented by any other attorney.

"THE COURT: And the Court is expecting the contemnor to supplement its affidavit in regard to those numbers in respect to any claimed conversations in which Mr. Cahalane was not a party, but which he contends are nevertheless involved in his right under the circumstances I mentioned, to counsel.

"The Court wants a separate supplement indicating the dates, the numbers called to, and the numbers called from in which any such conversation took place together with, in regard to those calls, a summary or a statement as to why that touches upon the attorney-client relationship."

On September 25, 1973, which was then the time permitted by the Court for the contemnor to file this supplemental affidavit, it filed its "reply affidavit."

Parenthetically, the reason why the Court specified in its Order at the last paragraph that it sought sufficient detail, including a summary of the subject matter of any calls touching upon the attorney-client relationship, was to aid it, hopefully without having to convene an additional hearing, in evaluating the affidavits and, if necessary, a transcript of the electronic surveillance between June 5 and June 20, 1972, of the Annie Mitchell telephone. Contrary to the Court's Order, the reply affidavit, in respect to the Mary Kennedy calls, was very vague and miscellaneous in nature and not responsive to the Court's Order. The particular paragraph offered in the contemnor's affidavit in this respect is on page 2 and reads as follows:

"Mr. Glackin has no available records of his telephone calls to Mary Kennedy or the Irish Northern Aid Committee. However he believes that most of these calls, beginning in June of 1972, were local calls made while he was in New York. *These calls were generally initiated from Mr. O'Dwyer's office telephone, 212-BO-9-3939."* (Emphasis added.)

The notes of testimony of the proceeding on September 18, 1973, at pages 15 to 18, cover the subject of calls to this phone where Government electronic surveillance was admitted to have been made. Because of the completely opposite position taken by contemnor from the underlined portion of the reply affidavit set forth above and the following excerpt appearing on page 18 of the notes of testimony of the hearing of September 18, 1973, the Court found it necessary to conduct still an additional hearing in order to question Mr. Glackin under oath.

"THE COURT: Do you know where he called from when he called?

"MR. NATALI: Mr. Glackin did not initiate any of the calls which is the difficulty, Your Honor.

"THE COURT: Oh!

"MR. NATALI: Because had he initiated any of the calls, we could very clearly say these calls were made to a different phone.

"THE COURT: Any calls that went from this line to Mr. Glackin were calls initiated by someone else to Mr. Glackin?

"MR. NATALI: These calls were initiated by Mary Kennedy and we do not know, Your Honor, from what line they were initiated." (N.T. p. 18)

\* \* \* \* \* \*

Accordingly, the Court, on October 1, 1973, issued its Order requiring the parties and the counsel to be in Court on Thursday, October 4, 1973, at which time a hearing was held and at which time the Court attempted to secure more detailed information as to the contemnor's position on any calls that were made during the surveilled period of June 5–20, 1972. At that same hearing, the Government, in response to the Court's

Order that it either withdraw, modify, or affirm its previous affidavit in light of the reply affidavit and the information disclosed at the hearing of September 18, 1973, *affirmed* its former affidavit to the effect that upon inquiry to the agencies of the United States authorized to conduct lawful electronic surveillance pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, that there had been no electronic surveillances occurring on premises known to have been owned, leased, or licensed by Charles A. Glackin, Esq., or Louis M. Natali, Esq., and that there have been no electronic surveillance directed against Charles A. Glackin, Esq., or Louis M. Natali, Esq., and that there have been no overhearings by electronic surveillance of conversations at any location to which either Charles A. Glackin, Esq., or Louis M. Natali, Esq., was a party; all such electronic surveillance referred to being legal or illegal.

At this juncture, therefore, there stood on the record before the Court the Government's affidavit that, in essence, indicated that it had conducted no legal or illegal electronic surveillance in respect to either of contemnor's attorneys. The contemnor's original affidavit and reply affidavit, together with the information furnished by contemnor and his counsel at the hearing of September 18, 1973, and the hearing of October 4, 1973, do not sufficiently challenge that affidavit under the standards enunciated in In re Horn or In re Grumbles, *supra*, and, accordingly, the representation is accepted by the Court for the truth of its averments on the issue covered by the affidavit.

The Court is, nevertheless, faced with the admission by the Government that it did conduct electronic surveillance under a Title III wiretap order authorized by the United States District Court in the Southern District of New York on the telephone of Annie Mitchell for the period of time between June 5 and June 20, 1972 (n.t. 12). In the contemnor's memorandum in support of its reply af-

fidavit filed September 25, 1973, the contemnor requested the Court to examine the transcript of that surveillance *in camera*. Although the Government's affidavit, as affirmed, states that it has not overheard either attorney Glackin or Natali in any surveillance, the Court believes that inasmuch as there does exist an actual surveillance over which contemnor claims these persons spoke that the best evidence of whether or not the Government's affidavit should be dispositive of the matter would be to grant the contemnor's request and examine the transcript, which it stated it would do at the hearing on October 4, 1973.

The Government represented on the record that the transcript delivered over to the Court was the transcript resulting from the electronic surveillance in question and that it was prepared in accordance with the procedures authorized to be used by the agency having been given the authority to conduct the wiretap.

Between the date of that hearing and the date of this Opinion, the Court has read the transcript in its entirety which consisted of 357 pages. As a result of that reading, the Court has concluded that neither Mr. Glackin nor Mr. Natali made any calls to or received any calls from that telephone during the period June 5 to 20, 1972; neither contemnor, Mr. Glackin, nor Mr. Natali were referred to or mentioned by any person calling to or from the telephones overheard during that surveillance on the basis of the identities furnished by contemnor's original affidavit 5(p); no matter respecting the representation of Mr. Cahalane was discussed by any party who spoke to or from the line over which the surveillance was conducted and no other conversation took place on said line that suggested to the Court that the right of the contemnor to the privacy of conversations or communications with his counsel was breached or in any manner intruded upon.

Accordingly, by reason of the acceptance of this Court of the Government's affidavit on all matters raised by contem-

nor except the electronic surveillance of June 5 to June 20, 1972, on the telephone of Annie Mitchell and by reason of this Court's finding that a review of the transcript of that surveillance does not disclose any unlawful intrusion upon Mr. Cahalane's rights to be represented by counsel within the full meaning of the constitutional guarantee of the Sixth Amendment, it is the Court's holding that such contention cannot be deemed to be a defense to the present order of contempt that was heretofore entered by this Court on July 26, 1973, and affirmed by the Circuit Court of Appeals for the Third Circuit on September 5, 1973.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

*Findings of Fact*

1. Charles A. Glackin and Louis M. Natali have been legal counsel to Daniel Cahalane since April 15, 1972 and May 1, 1973, respectively, to date.

2. The Government has not engaged in any legal or illegal electronic surveillance of Charles A. Glackin or Louis M. Natali, or on premises owned, leased or licensed by Charles A. Glackin or Louis M. Natali.

3. There have been no overhearings of any conversations at any location to which either Charles A. Glackin or Louis M. Natali was a party.

4. The Government has engaged in legal electronic surveillance pursuant to Title 3 of the Omnibus Crime Control and Safe Streets Act of 1968 on the telephone of Annie J. Mitchell, 2544 Valentine Avenue, Bronx, New York between June 5, 1972 and June 20, 1972, inclusive.

5. There have been no overhearings during the legal electronic surveillance of the phone of Annie J. Mitchell, 2544 Valentine Avenue, Bronx, New York during the period June 5, 1972 to June 20, 1972, inclusive, of any conversations to which Charles A. Glackin, Louis M. Natali or Daniel Cahalane, or either of them was a party; or in respect to which any matter touching upon Daniel Cahalane's right to legal counsel was the subject.

6. If the Court should find that Daniel Cahalane was without just cause to refuse to answer questions before the Federal Grand Jury and the Court on July 26, 1973, he would, if requested again, continue in such refusal.

*Conclusions of Law*

1. Daniel Cahalane was without just cause to refuse to answer questions before the Federal Grand Jury and the Court on July 26, 1973.

2. An Appeal from the Order entered herewith would be frivolous *and* taken for delay.

## ORDER

And now, to wit, this 9th day of October, 1973, on the basis of the Court's Findings of Fact and Conclusions of Law filed simultaneously herewith, the Court reaffirms its Order of contempt entered July 26, 1973 on the ground that the contemnor, Daniel Cahalane, was without just cause to refuse to answer questions before the Federal Grand Jury and the Court on July 26, 1973 and he continues to remain in such contempt.