MATTER OF HEMBLEN

In Exclusion Proceedings

A–18480956

*Decided by Board January 31, 1974*
*Decided by Board June 28, 1974*

When a claim is made under 18 U.S.C. 3504(a) that the subject of exclusion
proceedings has been aggrieved by an unlawful act, a motion to suppress
evidence derived therefrom under 18 U.S.C. 2518(10)(a) may properly be
received and adjudicated by the immigration judge.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant
with no immigrant visa and not exempt there-
from.

ON BEHALF OF APPLICANT:
Paul G. Chevigny, Esquire
New York Civil Liberties Union
84 Fifth Avenue
New York, New York 10011

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney
Allan A. Shader
Trial Attorney
Charles Gordon
General Counsel

BEFORE THE BOARD
(January 31, 1974)

This is an appeal from a decision of an immigration judge
finding the applicant excludable on the above charge and ordering
her exclusion and deportation from the United States. The appeal
will be dismissed.

The applicant is a 28-year-old married female alien, native and
citizen of Canada, who was admitted to the United States for
permanent residence on January 8, 1969. The record indicates that
she departed from the United States on or about May 11, 1970, and
on July 12, 1970 sought readmission to this country as a lawful
permanent resident. On that date she presented an Alien Regis-
tration Receipt Card, Form I–151, and was inspected by an officer
of the Immigration and Naturalization Service, who deferred
completion of the inspection. The applicant was then paroled into
the United States for further inspection at New York, New York,

where on September 15, 1972 her case was referred to an immigration judge for determination.

At a hearing held before an immigration judge on October 27, 1972, at which the applicant was represented by present counsel, certified copies of certain pages of the applicant's Canadian passport were offered into evidence by the trial attorney, without objection by counsel (Tr. p. 5), and were received collectively as Exhibit 5. The passport contains stamped endorsements which show that the applicant entered the Soviet Union at Moscow on May 12, 1970 and departed on June 9, 1970. Also introduced into evidence were several newspaper articles which indicate that the applicant was in North Vietnam during 1970 (Exs. 6, 7, 8, 9, 10), including one which had been written under the byline "Judy Gumbo" (Ex. 11). The writer of one of these articles (Ex. 7) testified at the hearing and identified the applicant as the "Judy Gumbo" who gave a press conference which he attended and on which he based his article (Tr. pp. 14–16).[1] The immigration judge concluded that this established that the applicant had engaged in travel proscribed by 8 CFR 211.1(b)(1), which provides in pertinent part:

In lieu of an immigrant visa, an immigrant alien returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad not exceeding 1 year may present Form I-151, Alien Registration Receipt Card, duly issued to him: *Provided*, That during such absence he did not travel to, in, or through any of the following places: ... Communist portions of ... Viet-Nam, and, ... the Union of Soviet Socialist Republics. ...

The above regulation further provides that these travel restrictions are waived for an alien who, subsequent to his departure from the United States, has received approval from the Service or the Department of State authorizing travel to the restricted places. 8 CFR 211.1(b)(2) provides that a similar waiver of travel restrictions may be secured by an alien who, prior to his departure from the United States, obtains a reentry permit which authorizes such travel. The applicant has stipulated that she had neither a reentry permit nor authorization from the Government to travel to or in areas interdicted by 8 CFR 211.1(b)(1) (Tr. pp. 7 and 9). We therefore agree that the applicant's Form I-151 was insufficient to establish her admissibility to the United States, and the immigration judge correctly determined that she was excludable under section 212(a)(20) of the Immigration and Nationality Act.

On appeal counsel contends that 18 U.S.C. 3504 requires that we remand the record for an inquiry into the applicant's claim that she has been the subject of unlawful electronic surveillance by the Government. At the exclusion hearing, the trial attorney denied

---

[1] The applicant also has stipulated that she has been known by the name "Judy Gumbo" (Tr. p. 3).

the occurrence of such surveillance (Tr. pp. 5–6). We note that he has executed an affidavit restating this denial, in opposition to a motion for a suppression hearing under 18 U.S.C. 2518, filed by the applicant in the United States District Court for the Southern District of New York.[2] We find that the Service has thereby discharged its obligation, under 18 U.S.C. 3504, to either affirm or deny the occurrence of the alleged unlawful act. See *In re Horn*, 458 F.2d 468 (C.A. 3, 1972) and *United States* v. *Doe (In re Marx)*, 451 F.2d 466 (C.A. 1, 1971).

Further, we find unpersuasive counsel's contention that these exclusion proceedings may have been "tainted" by the use of illegally obtained wiretap evidence. The evidence on which the immigration judge based his decision consists of entries in the applicant's Canadian passport, establishing her presence in a proscribed area, and newspaper articles recounting her own, deliberate, public statements. With regard to the present proceedings, the applicant could not therefore have been "aggrieved" by any claimed unlawful wiretap within the contemplation of 18 U.S.C. 3504(a)(1). Nor could the evidence on which the immigration judge relied be characterized as the "primary product of an unlawful act," as contemplated by 18 U.S.C. 3504(a)(1), since it merely represents documentation of the applicant's volitional conduct.

Counsel also challenges the validity of 8 CFR 211.1(b), claiming that it is not authorized by the Immigration and Nationality Act. We reject this contention. Section 103 of the Act gives the Attorney General broad authority to promulgate regulations in furtherance of the purposes of the statute. If a regulation is reasonably related to the purposes of the Act, it will be deemed valid, *Fook Hong Mak* v. *INS*, 435 F.2d 728 (C.A. 2, 1970). An alien's right to travel outside the United States is subject to restrictions not applicable to citizens, *Harisiades* v. *Shaughnessy*, 342 U.S. 580, at 586 (n. 10). The regulation in question, therefore, is clearly within the scope of the Attorney General's authority, as delegated to the Commissioner of Immigration and Naturalization, pursuant to section 103 of the Act. See *Bilbao-Bastida* v. *INS*, 409 F.2d 820 (C.A. 9, 1969). We are without power to rule on counsel's assertion that 8 CFR 211.1(b) is an unconstitutional violation of the applicant's freedom to travel. Cf. *Matter of Santana*, 13 I. & N. Dec. 362 (BIA 1969); *Matter of M—*, 9 I. & N. Dec. 138 (BIA 1960); *Matter of L—*, 4 I. & N. Dec. 556 (BIA 1951). Such a determination is properly a judicial, not an administrative, function.

---

[2] While this affivavit has not been made part of the administrative record, it was called to our attention at oral argument (Tr. of oral argument, pp. 20–22) and its contents were recited.

We reject, too, counsel's argument that under *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963), the applicant is not seeking to make an "entry" within the meaning of section 101(a)(13) of the Act. In that case the Supreme Court said that an alien's need to procure travel documents for a trip abroad, and whether the object of the trip is contrary to a policy reflected in the immigration laws, are relevant factors in determining whether such a departure is meaningfully interruptive of the alien's permanent residence so as to subject him to the consequences of an "entry" upon his return, within the scope of section 101(a)(13) of the Act. In the present case, the applicant needed travel documents for her trip, and is now charged with excludability precisely because she engaged in travel which, for policy reasons, is restricted by the immigration laws, 8 CFR 211.1(b). The applicant's departure was not, therefore, "innocent" and "casual" within the holding of *Rosenberg* v. *Fleuti*, *supra*, nor was her absence of two months a "brief" one. See *Matter of of Janati-Ataie*, Interim Decision 2170 (A.G. 1972). See also *Bilbao-Bastida* v. *INS*, *supra*, at 823.

The decision of the immigration judge in supported by clear and convincing evidence, and it will be affirmed.

**ORDER:** The appeal is dismissed.

**Maurice A. Roberts, Chairman, Dissenting:**

It is with some hesitancy that I dissent from the Board's decision, for it has surface plausibility, appears to be eminently reasonable, and is disarmingly simple. It seems to me, however, that the solution is not so simple and that a remand is required on the issue raised under 18 U.S.C. 3504.

As an alien lawfully admitted for permanent residence, the applicant is assimilated, on her return from a temporary visit abroad, to the status of a resident alien. Before she can be lawfully excluded, she is entitled to a due process hearing on the charge on which the Immigration and Naturalization Service seeks to exclude her. The burden of proving the charge is on the Service, *Kwong Hai Chew* v. *Rogers*, 257 F.2d 606 (D.C. Cir. 1958); *Matter of Becerra-Miranda*, 12 I. & N. Dec. 358 (BIA 1967).

The record establishes, by evidence which to me is clear, convincing and unequivocal, that during the period of her absence from the United States between May 11, 1970 and July 12, 1970, the applicant travelled to both the U.S.S.R. and the Communist portion of Vietnam.[1] The question presented is whether the appli-

---

[1] Her presence in *either* of those places would be sufficient to preclude her use of her Form I-151 as an entry document under 8 CFR 211.1(b)(1).

cant's challenge to that evidence under 18 U.S.C. 3504 was properly rejected. I think it was not and would remand the record to the immigration judge for further proceedings.

Preliminarily, I would reject counsel's contention (which the Board's treatment of the issue renders it unnecessary to confront) that the suppression question raised incident to 18 U.S.C. 3504 can be tried and adjudicated only in a judicial forum.[2] The short answer is that by their terms sections 3504(a) and 18 U.S.C. 2510 et seq. govern not only court hearings but also proceedings before quasi-judicial tribunals. Those provisions were assumed without question to be applicable to a hearing before an immigration judge in *Bufalino* v. *INS*, 473 F.2d 728 (C.A. 3, 1973), cert. denied 412 U.S. 928. Motions to suppress evidence have heretofore been made and adjudicated in deportation proceedings before immigration judges. See *Matter of Au, Yim and Lam*, 13 I. & N. Dec. 294 (BIA, 1969), affirmed *Au Yi Lau* v. *INS*, 445 F.2d 217 (D.C. Cir. 1971), cert. denied 404 U.S. 864; *Matter of Wong*, 13 I. & N. Dec. 820 (BIA, 1971); *Matter of Perez-Lopez*, Interim Decision No. 2132 (BIA, 1972). To require such suppression issues to be decided initially by the courts would not only impose an intolerable and unnecessary burden on them but would at the same time unduly delay the administrative proceedings pending before the immigration judge. I can see no good reason why the issue thus raised cannot be confronted and settled in the first instance by the immigration judge.

Turning now to the merits of that issue, it seems to me that the statutory provisions under discussion were designed to codify and refine the procedures for adjudicating claims that the Government's evidence had been obtained by illegal wiretaps or other unlawful means. Where it was established that the Government's evidence had been thus illegally procured, not only was that evidence suppressed but also any evidence derived from the information thus illegally obtained, i.e., "the fruit of the poisonous tree." *Nardone* v. *United States*, 308 U.S. 338 (1939); *Wong Sun* v. *United States*, 371 U.S. 471 (1963). The burden was on the proponent of the claim to prove that the Government had, in fact, engaged in the illegal evidence-gathering activity complained of. Once the use of such an illegal technique by the Government was proved, however, the burden shifted to the Government to show that the evidence it relied on was not obtained, directly or

---

[2] That contention was seriously urged before the immigration judge (Tr. p. 2), before the United States District Court for the Southern District of New York in the pending litigation there (Affidavit of Paul G. Chevigny, paragraph 4(a), Exhibit 4) and before the Board on appeal (Supplemental Brief for Respondent, p. 1).

derivatively, from the tainted source. The law as codified subsequently in 18 U.S.C. 2510 et seq. and 18 U.S.C. 3504 did not lighten the Government's burden in that regard. See *Gelbard* v. *United States*, 408 U.S. 41 (1972).

Counsel for the applicant asserts (Tr. p. 6) that as a result of information illegally obtained by unlawful electronic surveillance, the Government placed the applicant's name on a "lookout" list posted at airports, and as a consequence when she applied for admission at the Montreal airport she was stopped and referred for further examination culminating in these exclusion proceedings, notwithstanding her possession of a Form I–151 valid on its face. Evidence in support of the claimed use of electronic surveillance has been presented (Exhibit 4). In my estimation, this evidence is sufficient to bring into play the provisions of section 3504.

It seems clear to me that the applicant is a "party aggrieved" within the meaning of section 3504(a)(1). As the subject of these exclusion proceedings, who stands to lose her permanent residence here if her challenge to the evidence is rejected, the applicant clearly has standing to raise the issue. How much evidence of the claimed interception she must present to show that she is "aggrieved" need not now be decided. One court has expressed the view that section 3504(a)(1) is triggered by the mere assertion that unlawful wiretapping has been used against a party, *In re Evans*, 452 F.2d 1239 (D.C. Cir. 1971), cert. denied 408 U.S. 930. Another court has taken a narrower view, stating that section 3504(a)(1) places on the aggrieved party the responsibility of making a threshold showing of surveillance and some showing of a basis for suspecting illegal action, *United States* v. *Doe*, 460 F.2d 328 (C.A. 1, 1972). On either view, it seems to me, the applicant has made a sufficient showing to cast on the Service the statutory burden of affirming or denying the occurrence of the alleged unlawful act.

To hold, as does the Board's opinion, that the applicant is not "aggrieved" within the meaning of section 3504(a)(1) because the evidence on which the immigration judge based his decision consists of documents which the Board considers untainted, seems to me to beg the question. That is the very point at issue. If there was indeed unlawful electronic surveillance of the applicant, then the passport entries and newspaper articles in evidence, while not inadmissible as "the primary product" of the unlawful act, might still be inadmissible as "obtained by the exploitation of an unlawful act," i.e., as the "fruit of the poisonous tree." So far as I am aware, the doctrine that the "fruit of the poisonous tree" is inadmissible has not thus far been repudiated by the courts. See, e.g., *United States* v. *Calandra*, 414 U.S. 338 (1974). It would render

nugatory the "affirm or deny" provision of section 3504(a)(1) to require a party to prove, before he could be considered "aggrieved," that not only was there an "unlawful act" but also that the Government's evidence is the product of that act or its exploitation.

If it could be assumed that under no conceivable circumstances could the Service's possession of the challenged evidence be attributable to information stemming from the claimed "unlawful act," I would go along with the Board's decision. Underlying the statutory provisions in issue is the policy that the Government shall not benefit evidence-wise from its own unlawful acts. Congress could not have intended recourse to those provisions in a situation where there could not possibly have been any such unlawful act. But that is not this situation.

Here, a number of factual variables are possible: (1) The Service could have learned through an "unlawful act" that the applicant was travelling (or intended to travel) to the proscribed foreign areas; could have posted the alleged airport "lookout" notices as a result; and could have achieved its documentary and other evidence (including the notations in her passport) in consequence of being thus alerted solely by information deriving from the "unlawful act." (2) The Service could have learned of the applicant's proscribed travel solely through clearly untainted sources (e.g., the newspaper accounts); could have posted the alleged airport "lookout" notices as a result; and could have achieved its documentary and other evidence through being thus alerted by information deriving from sources clearly legitimate. (3) The Service could have been unaware of the applicant's foreign travel until her actual return; could have posted no airport "lookout" notices; could have first learned of her proscribed travel by examining the notations in her passport when she was inspected on arrival at Montreal airport; and could thereafter have assembled the other evidence as a result of being thus alerted by information clearly unexceptionable. Other possible factual variations are conceivable, but the foregoing should be sufficient to demonstrate that on the record as thus far developed there is as yet no open-and-shut answer.

It may be that the Board's decision is premised on the notion that it would make no difference even if, as postulated in variable (1) above, the Service had been alerted to the applicant's absence by information gleaned solely through an unlawful act, so long as the evidence actually relied on (passport entries, newspaper reports, Oppenheimer's testimony) was not the direct product of the unlawful act. It seems to me that such an approach ignores the possibility that the evidence actually relied on may have been

assembled as a result of the information allegedly obtained unlawfully, and that the evidence may thus be "the fruit of the poisonous tree." If that turns out to be the fact, then the question whether the taint is removed by attenuation, so as to render the evidence admissible, must await further development of the record on remand.

In its brief on appeal before us, the Service asserts (p. 9), "It was clearly the overt act of the applicant in her publicity effort which brought her travels in the U.S.S.R. and North Vietnam to the attention of the Service so that she was stopped at Montreal for completion of inspection. She thereafter presented her passport showing travel in U.S.S.R." This assertion may very well turn out to be the fact, upon further development of the record on remand.[3] At this posture of the case, the assertion constitutes mere argument and assumes the existence of the very facts in dispute. The Board's decision, in my view, is based on the same fallacy.

I am somewhat puzzled by counsel's seeming concession at oral argument that the applicant's travel to the U.S.S.R. was established by probative evidence.[4] If that were the fact, then that would end the matter, so far as I am concerned, for I agree with the Board's conclusion that 8 CFR 211.1(b)(1) is valid. The applicant's presence in the U.S.S.R. is sufficient, without more, to render her inadmissible as charged. The concession, however, appears to be inconsistent with counsel's seriously urged contention that the evidence is tainted. Taken in context, the concession must be construed as part of the larger argument that, though probative, the passport entries are inadmissible as evidence because they stem from initial illegal actions by the Government, an issue that remains to be developed on remand.

At the hearing before the immigration judge, the following colloquy took place between the immigration judge (SIO) and the Service's trial attorney, Mr. Shader (Tr. p. 6):

> MR. SHADER: I would say that there is no reason at all to assume that she was stopped because of electronic surveillance, none at all.
>
> SIO: Mr. Shader, do you have the administrative file pertaining to the applicant?

---

[3] In view of the passport waiver accorded returning residents by 8 CFR 211.2(c), there is no reason to assume that, absent some sort of "lookout" posted at the airport, on arrival at Montreal the applicant would have been asked to submit her passport to the immigrant inspector.

[4] (Tr. of oral argument, p. 3): "We concede there was clearly [ad]missible probative proof [of] travel, an official U.S. authenticated document showing there was travel to the U.S.S.R. stamped in her passport." (Tr. of oral argument, p. 5): "I concede in a legal sense she was in the U.S.S.R. I concede because I have to, there is probative evidence she was there."

MR. SHADER: I do, sir.

SIO: And was your negative statement as a result of your examination of that file?

MR. SHADER: That is correct, sir.

In his opinion, the immigration judge concluded (p. 6) that the foregoing disclaimer was sufficient to meet the requirements of section 3504, stating "Such negation need not, in this exclusion hearing, have the same rigidity as in judicial proceedings."

At the oral argument, the Service's representative handed up, over counsel's objection, a copy of Mr. Shader's affidavit filed in the District Court proceedings in opposition to the applicant's motion for a suppression hearing. That affidavit states, in pertinent part:

5. No evidence introduced at the hearing held on October 27, 1972, or which will be introduced at any adjourned hearing was obtained directly or indirectly as the result of any intercepted wire or oral communication whatsoever.

6. I have reviewed the entire Service file relating to [the applicant] and there is no information contained therein that was derived either directly or indirectly from the use of any interception of wire or oral communication. Additionally, no interception of any wire or oral communication has been the source, direct or indirect, of any information obtained during the Service's investigation or pending administrative action.

The Board has concluded that, through the above-quoted assertions of its trial attorney, the Service has discharged its obligation under section 3504 to either affirm or deny the occurrence of the alleged unlawful act. I cannot agree. In the quoted material, the trial attorney neither affirmed nor denied *the occurrence of* the alleged electronic surveillance. He merely stated his own generalized conclusion that the Service's information and evidence did not *derive* from any intercepted communication. This is a far cry from a categorical statement, made after inquiry, that there was in fact no interception. In my estimation, it is the latter sort of statement which section 3504 contemplates. Cf. *United States* v. *Doe*, 451 F.2d 466 (C.A. 1, 1971); *In re Horn*, 458 F.2d 468 (C.A. 3, 1972). The trial attorney's generalized conclusion is as compatible with the existence of the alleged interceptions as it is with their nonexistence. A factual conclusion of this sort as to whether or not the evidence in question does in fact derive from the alleged interception is for the tribunal to make, not the trial attorney.

The danger in permitting such a generalized disclaimer to stand is that, however sincerely made, it is liable to be unintentionally false unless based on specific inquiry as to the existence or not of the alleged intercepts. The Service file itself may not reveal that the sources of its information were illegal wiretaps. That was the situation in the *Bufalino* case. The Board's decision in that case

747

states, "During the course of the last reopened hearing, the trial attorney denied any knowledge of wiretapping or interception of phone calls to the respondent by the Immigration and Naturalization Service," *Matter of Bufalino*, 12 I. & N. Dec. 277, 283 (BIA 1967). And see *Bufalino* v. *INS*, *supra*, 473 F.2d 728 at 732: "In the hearing before the [immigration judge] the prosecuting attorney and his principal investigator stated that they had no knowledge whatsoever of wiretapping in the cause and that there was none to the best of their knowledge." Those statements were undoubtedly sincerely made by the Service officers involved. Yet, it was subsequently brought out, Bufalino's telephone conversations had in fact been intercepted by the F.B.I. Logs of the monitored conversations were produced and a further hearing was held to determine whether the Service's evidence was tainted, *id* at pp. 734-735.

I cannot agree with the immigration judge that, in administrative proceedings such as these, the disclaimer need not meet the standards required in judicial proceedings. Section 3504 in terms applies equally to both types.

It should be a relatively simple matter for the Service to ascertain, by appropriate inquiry, whether agencies of the Government did, or did not, engage in the alleged unlawful interception. If it turns out that there was such interception, the Service may still be able to demonstrate that its evidence is free of taint. If, for example, as asserted by the Service in its brief before us, it was the applicant's press conference while abroad that first brought her travel to the U.S.S.R. and North Vietnam to the attention of the Service, it should be a relatively simple matter to develop that fact of record.

I would remand the record to the immigration judge for further hearing.

BEFORE THE BOARD

(June 28, 1974)

On January 31, 1974, with one dissent, we dismissed the applicant's appeal from an order of an immigration judge excluding her from admission to the United States. In doing so, we rejected counsel's contention that under 18 U.S.C. 3504(a), remand to the immigration judge was required for an inquiry into the applicant's claim that she has been the subject of unlawful electronic surveillance by the Government. Because of the pendency of a court action brought by the applicant to terminate the exclusion proceedings, our order was reviewed by the Department's Criminal Division, which recommended to the Service that it file a motion

for reconsideration, asking that we remand the case to the immigration judge for further development of the administrative record in accordance with the procedures outlined in the dissenting opinion.

The Service now moves that we reopen the proceedings and remand to the immigration judge for the purpose of conducting the hearing on the applicant's claim under 18 U.S.C. 3504(a). Counsel now opposes the Service motion on the ground that 18 U.S.C. 2518(10)(a) requires that such a hearing must be in a judicial, and not an administrative, proceeding. The Service motion will be granted and the record will be remanded to the immigration judge.

By its terms, 18 U.S.C. 2515 prohibits the use of unlawfully intercepted wire or oral communications as evidence "in any trial, hearing, or other proceeding in or before any court ... department, officer, agency, ... or other authority of the United States ...." Section 2518 of Title 18 includes procedures for the determination of motions to suppress such unlawfully obtained evidence. Section 2518(9) specifically governs judicial determinations, and section 2518(10)(a) refers to judicial as well as administrative proceedings under section 2518.

An examination of the precise language of section 2518(10)(a) persuades us that the applicant's challenge to the immigration judge's capacity to entertain a motion to suppress under that section is without merit. That section provides:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States ... may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
> (i) the communication was unlawfully intercepted....

The provision goes on to state that such a motion "shall be made *before* the trial, hearing, or proceeding unless there was no opportunity to make such motion...." (Emphasis supplied.) Nowhere does this section expressly, or, in our view, impliedly, limit a determination on such a motion, made in the course of any proceeding before an authority of the United States, to a judicial officer. Nothing in the legislative history of the provision supports counsel's contention, 1968 U.S. Code Cong. & Ad. News, pp. 2195–2196.

It is our conclusion that when Congress provided for the filing of a motion to suppress illegally obtained wiretap evidence in various proceedings of the United States Government, it intended that the particular presiding officer rule on its sufficiency. If Congress intended to carve out an exception to the doctrine of exhaustion of administrative remedies in proceedings under section 2518, and to

749

provide for immediate judicial intervention, it would have so stated.

Counsel's reference to the legislative history does not support his assertion. 1968 U.S. Code Cong. & Ad. News, pp. 2189–2196, which discusses section 2518, concerns itself primarily with the procedures for obtaining a court-ordered interception. Naturally, the provision there discussed, by its terms, contemplates a judicial proceeding.

Section 2518 is captioned "Procedure for *interception* of wire or oral communications" (emphasis supplied), and deals with *judicially authorized* wiretap orders. This accounts for the frequent references to "judge" throughout section 2518. It does not, however, restrict the well-established authority of administrative officers in immigration proceedings to rule on questions of the admissibility of evidence. See *Matter of Au, Yim and Lam,* 13 I. & N. Dec. 294 (BIA 1969), affirmed *Au Yi Lau v. INS,* 445 F.2d 217 (D.C. Cir. 1971), cert. denied 404 U.S. 864; *Matter of Wong,* 13 I. & N. Dec. 820 (BIA 1971); *Matter of Perez-Lopez,* Interim Decision No. 2132 (BIA 1972).

Sound judicial administration requires that unnecessary litigation be avoided. It is possible for the applicant to get relief administratively here, and if she does not, then judicial review of the immigration judge's action is ultimately available. We will not impute to Congress an intention to thrust upon the courts matters which might have been disposed of administratively.

We conclude, therefore, that when a claim is made under 18 U.S.C. 3504(a) that the subject of exclusion proceedings has been aggrieved by an unlawful act, a motion to suppress evidence derived therefrom may properly be received and adjudicated by the immigration judge. Accordingly, the following order will be entered.

ORDER: The Service motion to reopen is granted and the record is remanded to the immigration judge for further proceedings in accordance with the foregoing opinion.