### In re Grand Jury Proceedings, James Frederick WEIR, Jr.

#### Misc. No. 344.

United States District Court,
S. D. California.

March 5, 1974.

921

Harry D. Steward, U. S. Atty., Elizabeth Meyer, Atty., Dept. of Justice, San Diego, Cal., for petitioner.

H. Peter Young, Venice, Cal., for respondent.

## ORDER ADJUDICATING CIVIL CONTEMPT

TURRENTINE, District Judge.

### I. BACKGROUND

This is a civil contempt proceeding, pursuant to 28 U.S.C. § 1826(a), to determine whether just cause exists for Mr. Weir's refusal to answer questions put to him by the Federal grand jury.

On June 14, 1973, Mr. Weir was brought before a federal grand jury to answer questions regarding possible violations of the United States' narcotics laws. Mr. Weir refused to answer any questions and the government thereupon moved that this court immunize witness Weir pursuant to the "use and derivative use" immunity statute, 18 U.S.C. §§ 6002, 6003.

Mr. Weir, who throughout these proceedings has been most ably represented, requested leave of this court to prepare an opposition to the government's motion for immunity and order to testify. This court granted Mr. Weir's counsel such time whereupon counsel submitted a series of documents designed both to test the government's motion for an order to testify and to discover certain materials if in the possession of the government.

Mr. Weir opposed the government on four grounds: 1. that the immunity conferred by § 6002 was not coextensive with the Fifth Amendment privilege since it still would leave him liable to prosecution for having made prior false statements to government officials, 18 U.S.C. § 1001; 2. that since Weir is himself a target of the grand jury's investigation, any immunity would violate his Fifth Amendment rights in that the grand jury would be unable to ignore his immunized testimony in reaching its decision whether to indict; 3. that the immunity order would not protect him from the "substantial possibility" of prosecution by Mexican authorities; and 4. that the grand jury appearance and questioning were products of involuntary statements made to Mexican officials.

This court was unpersuaded by Mr. Weir's arguments and granted him use immunity. With respect to the discovery motions, the government acceded to some and this court denied others. The specific nature of each motion and this court's ruling is made plain below since the motions were renewed at the contempt hearing and this order is fruit of that contempt hearing.

On November 1, 1973, Mr. Weir again refused to answer notwithstanding the immunity and the government moved that this court hold Mr. Weir in civil contempt for disobeying the court's order to reply to questions asked originally on June 14 and repeated on November 1.

This court scheduled for December 17, later continued to February 11, a "show cause" hearing in order to provide Mr. Weir's counsel with notice and a reasonable time to prepare a defense, i. e. to show "just cause" for refusing to respond.

### II. CONTEMPT HEARING

In response to this court's order to show cause, Mr. Weir filed several discovery motions and, as "just cause," raised the same points raised at the immunity stage plus the argument that the contempt sanction was totally unnecessary because the government had adequate and less drastic alternatives to reach the desired end. Furthermore, at the hearing Mr. Weir's counsel argued that Mr. Weir had a deep moral revulsion against testifying against his friends and that no sanction would shake that conviction. Therefore, Mr. Weir's counsel continued, to impose civil contempt would be punitive and unlawful. At the conclusion of the hearing, the parties stipulated that Mr. Weir would not testify if so ordered despite immunity and that this court was to impose or withhold civil contempt in accordance with its resolution of the issues presented without need of requiring Mr. Weir to go through the empty gesture of appearing before the grand jury and again refusing to respond. Despite the stipulation, this court gave Mr. Weir one

final opportunity to comply with the order to testify. Mr. Weir refused.

### A. Discovery Motions

The discovery motions fall into three broad categories: 1. those related to providing Mr. Weir with a copy of a transcript of his grand jury appearance; 2. those related to the allegedly coerced statement made to Mexican officials; and 3. those related to electronic surveillance.

### 1. Transcript

■ This court ordered that a copy of the transcript be made available in chambers to Mr. Weir and his counsel at their convenience but refused to provide Mr. Weir with a copy. As this court reasoned in In re Alvarez, 351 F.Supp. 1089 (S.D.Cal.1972), "often those providing information to the grand jury are 'mules' who have been apprehended in possession of drugs. They are subject to pressure and threats of retaliation from dealers for whom they work and against whom indictments are sought." Not providing a witness with a copy of his grand jury appearance encourages him to testify freely and protects him from his partners in crime, if any there be. See In the Matter of Biaggi, 478 F. 2d 489 (2d Cir. 1973). This court believes that its order allowing Mr. Weir and his counsel to view the transcript in chambers adequately affords Mr. Weir the opportunity to refresh his recollection before re-appearing and to correct any mistakes he may have inadvertently made. Consequently, our original order stands.

### 2. Mexican Confession

■ With regards to the motions related to the allegedly coerced statement in Mexico, our decision below with respect to the availability of that allegation as a defense in this contempt proceeding makes clear our ruling here denying such motion as premature and irrelevant.

### 3. Electronic Surveillance

■ Finally, Mr. Weir's motion regarding allegedly illegal electronic surveillance raises issues resolved in this Circuit by United States v. Alter, 482 F.2d 1016 (9th Cir. 1973). As was definitively stated in Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L. Ed.2d 179 (1972), 18 U.S.C. § 2515, provides grand jury witnesses with a defense to contempt charges brought on the basis of their refusal to obey court orders to testify. § 2515 bars the use as evidence before official bodies of the contents and fruits of illegal electronic interceptions. We are quick, however, to note that the Supreme Court expressly stated that it did not reach any of the constitutional issues tendered as to the right of a grand jury witness to rely upon the Fourth Amendment as a basis for refusing to answer questions.

■ This Circuit requires that the witness raise a prima facie case through affidavits and other evidence revealing specific dates, places and names relevant to the alleged illegal electronic surveillance. The witness' allegations or those of his attorney must be more than "vague and speculative" if the government is to be required to deny illegal monitoring.

The government has conceded that Mr. Weir has met the five element test of *Alter, supra.* The fullness of the government's response is discussed below in deciding whether Mr. Weir has shown "just cause" for refusing to respond.

### III. JUST CAUSE

### A. Fifth Amendment

### 1. Use Immunity

■ Mr. Weir argues that immunity pursuant to § 6002 is on its face not coextensive with the Fifth Amendment right against self-incrimination. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1971) gives the lie to such a proposition.

In addition, Mr. Weir argues that certain special circumstances make use immunity inadequate in his particular situation. As special circumstances Mr. Weir raises his vulnerability to prosecution for making prior false statements, the possible use by the grand jury of his immunized testimony, and the threat of foreign prosecution.

At the immunity stage we considered these identical arguments and rejected them. For the reasons stated below we reject them also at this contempt stage.

### 2. Prior False Statements

■ Citing In re Baldinger, 356 F. Supp. 153 (C.D.Cal.1973), Mr. Weir argues that if he testified his Fifth Amendment rights would be violated despite the immunity since his testimony before the grand jury could be used to incriminate him in a prosecution for making prior false statements to law enforcement officials under 18 U.S.C. § 1001.

The Ninth Circuit, however, in *Alter, supra,* has rejected this contention and this court agrees with and is bound by that ruling.

### 3. Grand Jury Misuse

Mr. Weir contends that since he is a target of the grand jury before whom he is being asked to testify, it would be nearly impossible to determine, in the event of an indictment, whether that indictment was tainted by the use of the immunized testimony.

■ The government, in open court, has assured this court that it will not ask the grand jury before whom Mr. Weir has been ordered to testify to return any indictment against Mr. Weir. This assurance alone would defeat Mr. Weir's argument, United States v. Goldberg, 472 F.2d 513 (2d Cir. 1973). Moreover, the government has certified to this court, in camera, the evidence in its possession against Mr. Weir prior to his testifying before the grand jury. This court, with the government's assent, has ordered that any future prosecution of Mr. Weir is limited to the evidence so certified. It appears to this court that with these two substantial safeguards against lawlessness by either grand jury or government, Mr. Weir's argument is without merit.

### 4. Foreign Prosecution

Finally, Mr. Weir argues that his right against self-incrimination would be trespassed in that the immunity order could not immunize him from foreign prosecution.

Whether the reason of the Fifth Amendment extends to foreign prosecutions is open to question. The issue was presented to the Supreme Court, Zicarelli v. New Jersey Investigation Comm'n, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972), but was not decided.

Counsel for Mr. Weir relies heavily on In re Cardassi, 351 F.Supp. 1080 (D. Conn.1972) where the district court decided that the Fifth Amendment did protect against foreign prosecution and that F.R.CrimP. Rule 6(e) did not provide adequate protection from the risk of foreign prosecution.

■ Two circuits have held, contrary to In re Cardassi, *supra,* that the secrecy provided for by Rule 6(e) precludes any substantial risk of foreign prosecution. In re Tierney, 465 F.2d 806 (5th Cir. 1972); In re Parker, 411 F.2d 1067 (10th Cir. 1969) vacated as moot sub nom. Parker v. United States, 397 U.S. 96, 90 S.Ct. 819, 25 L.Ed.2d 81 (1970). We are persuaded by both these decisions that the secrecy of grand jury proceedings protects against any substantial risk of foreign prosecution.

■ Furthermore, the Supreme Court in *Zicarelli, supra,* reiterated that the self-incrimination privilege protects against real dangers and not against remote and speculative possibilities. Mr. Weir was deported from Mexico. He has not demonstrated to this court that he is in any real danger of being compelled to disclose information which would tend to incriminate him under some foreign law.

## B. Mexican Confession

As an alternative defense in this contempt proceeding, Mr. Weir raises the issue of an allegedly coerced confession to Mexican authorities. Mr. Weir's counsel argues that this court's order to testify would permit the government to use information during grand jury questioning gathered as a result of an allegedly brutal interrogation at the hands of Mexican officials.

■ A grand jury proceeding is not an adversary hearing in which the guilt or innocence of an accused is adjudicated. Rather it is an ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. The grand jury's investigative powers must be broad if its public responsibility is adequately to be discharged. Branzburg v. Hayes, 408 U.S. 665, 700, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

This term the Supreme Court addressed itself to a problem strikingly similar to the one before this court. In United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Court, in discussing evidence, which was the product of an illegal search, said that as long as the tainted evidence was excluded at trial the deterrence purpose of the exclusionary rule would be served and that whatever gains in deterrence would be made by excluding such evidence from grand juries would at best be marginal. Consequently, the Court held that a grand jury could use evidence illegally seized from the witness as a basis for questioning that witness.

■ Counsel for Mr. Weir accurately points out the different rationales supporting the Fourth and Fifth Amendment exclusionary rules. The primary purpose of excluding illegally seized evidence is to deter police misconduct. However, the imperative of judicial integrity is also an element of the Fourth Amendment exclusionary rule. In Gelbard, supra, for example, the court discussed the problem of courts becoming handmaidens to illegality and the dissent in Calandra, supra, reviewed the same issue. Coerced confessions, on the other hand, are excluded because they are unreliable as well as because they implicate the judiciary in illegality.

■ Neither Fifth Amendment exclusionary policy is significantly furthered by precluding a grand jury from asking Mr. Weir questions based on the Mexican confession or by allowing the Mexican confession as a defense in this contempt proceeding. As the Supreme Court remarked in Gelbard, supra, we deal here not with the rights of a criminal defendant but rather with the status of a witness summoned to testify before a body devoted to sifting evidence that could result in the presentment of criminal charges.

If the Mexican confession is unreliable, it will provide the government with false investigative leads, but Mr. Weir will run no risk of conviction, nor even of indictment.

As to judicial integrity, Calandra decided that the orderly progress of grand jury investigation justified whatever stain might be placed on the judiciary's ermine by disallowing in a contempt proceeding the defense of illegally seized evidence. In the Fifth Amendment area, however, it is said that the illegality does not occur at the time of the coerced confession but at the moment it is introduced in court. The illegality consists in denying a defendant his right against self-incrimination: a distinctly court-oriented policy.

■ Mr. Weir is a grand jury witness and not a defendant; he has received use and derivative use immunity; in this court's opinion the policy reasons behind excluding involuntary statements do not support affording Mr. Weir a defense in this contempt proceeding. This court is entangled in no illegality since the proscription of the Fifth Amendment is not being violated: Mr. Weir is not involuntarily incriminating himself.

### C. Electronic Surveillance

*Alter, supra,* requires that the government response to a prima facie showing of illegal electronic surveillance by a witness or his counsel be "factual, unambiguous, and unequivocal."

 The affidavits submitted by the government state that the agencies inquired of were the only governmental agencies that could have been involved in electronic surveillance, reveal the dates of claimed surveillance to which the inquiries were addressed, and identify the persons with whom the U.S. Attorney communicated in making the inquiries. In short, the government has squarely denied the charges of illegal electronic surveillance with respect to Mr. Weir and his counsel. Therefore, 18 U.S.C. § 2515 provides Mr. Weir with no haven from the imposition of contempt.

### D. Miscellaneous

Finally, Mr. Weir argues that his testimony is unnecessary and that civil contempt is too severe a sanction since he will never respond to grand jury questioning.

The U.S. Attorney has informed this court that Mr. Weir's testimony is necessary and this court is not empowered to review the U.S. Attorney's judgment that the testimony of the witness is necessary to the public interest. Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956); In re Kilgo, 484 F.2d 1215 (4th Cir. 1973).

While civil contempt is a drastic remedy, "it is essential that courts be able to compel the appearance and testimony of witnesses." Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Mr. Weir has failed to demonstrate any compelling interest in remaining silent. While informing against ones friends is not normally admired in our society, our criminal system would collapse without the court's power to make witnesses freely and fully testify.

### IV. CONCLUSION

For the above stated reasons, this court, after holding an uninhibited adversary hearing, adjudges Mr. Weir in civil contempt and commits him to the custody of the Marshal until such time as he purges himself by testifying before the grand jury.