In re Grand Jury Proceedings.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Douglas STEVENS, Defendant-
Appellant.

No. 75–1320.

United States Court of Appeals,
Fifth Circuit.

March 21, 1975.

Rehearing and Rehearing En Banc
Denied April 28, 1975.

Richard M. Gale, Miami, Fla., Alan E. Weinstein, Miami Beach, Fla., for defendant-appellant.

Marty Steinberg, Sp. Atty., U. S. Dept. of Justice, Miami, Fla., R. H. Wallace, Jr., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

This appeal concerns the legitimacy of incarceration of a grand jury witness under the district court's civil contempt power, 28 U.S.C. § 1826.[1] The witness in question, ruled in contempt and imprisoned because he refused to answer questions after a grant of "use" immunity pursuant to 18 U.S.C. § 6002, challenges the district court's order on the grounds that the government secured information for questioning him through illegal electronic surveillance and that the grand jury lacked authority to compel his testimony. Finding these contentions unpersuasive, we affirm.

A grand jury empanelled in the Southern District of Florida first subpoenaed the appellant Stevens to appear before it in May 1974. He appeared but refused to testify, asserting the Fifth Amendment privilege against self-incrimination. The district court, acting at the government's request, thereupon immunized him under 18 U.S.C. § 6002 and ordered that he give testimony before the grand jury which had subpoenaed him, "as well as any subsequent Grand Jury, proceeding or trial." Stevens subsequently reappeared before the grand jury but again declined to answer all but preliminary questions concerning his name, address and occupation. He was immediately brought before the district court, adjudged in contempt, and imprisoned under 28 U.S.C. § 1826. He remained in jail until November 21, 1974, the date on which the grand jury term expired. Stevens does not now contest the validity of this initial incarceration.

On November 5, 1974, several weeks prior to his release, and during the term of the initial grand jury, Stevens received a subpoena to testify before a second grand jury which was to convene on November 26, 1974. He responded by filing a motion to quash the subpoena on the grounds that a grand jury had power only to subpoena witnesses for testimony during the course of its own term and could not order a witness to appear before a grand jury not yet empanelled. The motion was denied.

On December 10, 1974, Stevens appeared before the second grand jury. Although reminded that he was testifying under a grant of immunity, he would state only his name and address and indicate that he was not an American citizen. He refused to answer any further questions, claiming First, Fourth and Fifth Amendment privileges, and asserting that the questions asked him were based on information obtained by an "illegal wiretap."

---

1. 28 U.S.C. § 1826 provides:

   (a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

   (1) the court proceeding, or

   (2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

   (b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

Its patience exhausted, the government again petitioned the district court to rule Stevens in contempt for refusing to testify. In his defense[2] Stevens argued, among other things, that "the questions asked him by the Government before the Grand Jury and which he refused to answer were the primary product of an unlawful act or were predicated on the results obtained by the exploitation of an unlawful act as defined in . . . 18 U.S.C., Section 3504(b)."[3] Specifically, his pleading contended that

the questions asked him before the Grand Jury, as presented in open court by the Government were based on an illegal interception of conversations of his which occurred on telephone numbers (305) 866–4870 and 861–8921 and telephone numbers (305) 754–1279 and 751–0066. In addition to being an aggrieved party based on the fact that the witness' conversations on these phones were intercepted, the witness had a proprietary interest in the premises where the latter two phone numbers were located.

Every question asked the witness stemmed from the unlawfully intercepted conversations of himself and others.[4]

During a hearing held to consider the contempt citation, government counsel orally admitted that federal authorities had indeed tapped the telephones described by Stevens in order to gain information for a prior investigation but insisted that the district court had already determined the legality of those wiretaps in the case of United States v. Sklaroff, No. 74–267–Cr–CA (S.D.Fla., Oct. 23, 1974). Government counsel further admitted that the Sklaroff wiretap may have formed the basis for some of the questions asked Stevens before the grand jury, and offered to the court for its in camera inspection all materials on which the questions were based.

At this point Stevens indicated to the court for the first time that he had been the victim of additional illegal electronic surveillance, apart from the Sklaroff wiretap. He sought to substantiate his claim of additional illegal surveillance during the following colloquy:

DEFENSE COUNSEL: Mr. Stevens, I direct your attention to one of the questions asked to you about certain people and conversations that may have taken place at the Pagoda Restaurant, coupled with the questions which were asked to you of other people's financial interests in gambling ventures. Did you, sir, have any private communications about this with a person known as Martin Sklaroff?

\* \* \* \* \* \*

STEVENS: Yes, sir.

DEFENSE COUNSEL: Where did this conversation take place?

the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act;

\* \* \* \* \* \*

(b) As used in this section "unlawful act" means any act the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto.

2. In Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), the Supreme Court held that witnesses were entitled to invoke the statutory prohibitions of 18 U.S.C. § 2515 as a defense to contempt charges brought against them for refusing to testify before a grand jury. § 2515 prohibits the use in any proceeding of information or evidence derived from unlawful interception of wire or oral communication. Gelbard indicated that its holding was substantiated by 18 U.S.C. § 3504.

3. 18 U.S.C. § 3504 provides in pertinent part:

(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is

4. Government counsel asserted orally during the contempt hearing that the telephones referred to by the defense were not on the premises of or in any way controlled by Stevens but were the telephones of one Martin Sklaroff. The legality of these wiretaps was established in a prior judicial proceeding.

STEVENS: In the privacy of my office.

DEFENSE COUNSEL: Which office?

STEVENS: In the Pagoda Restaurant.

DEFENSE COUNSEL: Was it on the telephone?

STEVENS: No.

DEFENSE COUNSEL: Who was present at this conversation other than you and Mr. Sklaroff?

STEVENS: Just the two of us.

The court then permitted Stevens to state for the purposes of his § 3504 claim that the questions asked him before the grand jury must have come from unlawful interception of private conversations with Sklaroff not occurring over the telephone.

Government counsel orally denied knowledge of any other electronic surveillance. Stevens asked that the government make a formal § 3504 response to his allegation of illegal surveillance and the government attorney subsequently filed the following unsworn, written denial at the court's direction:

> Now Comes the Government and responds to this witness' request under 18 U.S.C. 3504. The Government responds that any questions asked of this witness that emanated from electronic interceptions emanated from electronic interceptions in the case of United States v. Sklaroff, No. 74–267–Cr–CA. No other questions were based on any other electronic surveillance.

> Furthermore, under 18 U.S.C. 3504 United States denies the occurrence of any unlawful act to obtain information about questions asked of this witness in the Grand Jury.

>> /s/ Marty Steinberg
>> Special Attorney
>> U. S. Department of Justice

In adjudging Stevens in contempt for failing to answer questions before the grand jury, the district court concluded that the witness's § 3504 claim of unlawful electronic surveillance was adequately met by "the Government's willingness to state for the record that no illegal electronic surveillance was conducted which would form the basis for any questions posed to this witness before the Grand Jury."

Stevens advances three reasons for reversal of the contempt order: (1) the government's unsworn denials that it had not used illicit electronic surveillance to gather information concerning Stevens did not satisfy the requirements of 18 U.S.C. § 3504; (2) the initial grand jury lacked authority to issue a subpoena compelling his appearance before a grand jury not yet empanelled; and (3) the government was obliged to permit him to inspect the authorization and supporting affidavits for the wiretaps used to gather evidence against him.

The most perplexing issue before us concerns the adequacy of the government's denial of the use of unlawful electronic surveillance. § 3504, stating merely that the party opposing the claim of illegal surveillance must "affirm or deny" the commission of any unlawful act, does not specify the proper mode of such affirmance or denial. Stevens suggests that a denial must be made by sworn affidavit with the affiant specifying in detail that he personally determined from inquiries with all relevant governmental agencies that no agency involved with the investigation conducted any unlawful surveillance. The government counters in essence that when the witness's claim of illegal surveillance is general and unsubstantiated, § 3504(a)(1) is satisfied by a general denial made in good faith.

Stevens purports to find support for his position in two decisions of this court considering the adequacy of the government's § 3504 denial. *See* In re Tierney, 465 F.2d 806 (5th Cir. 1971); Beverly v. United States, 468 F.2d 732 (5th Cir. 1972). Both cases uphold the sufficiency of the government's denial, but Stevens argues that in so doing, they establish rather strict standards for reviewing a § 3504 response. In *Tierney*, we approved a denial given under oath with the government counsel making the denial

subject to cross examination. The affidavit stated that the Department of Justice had checked with all government agencies which could have been connected with the investigation, including the Department of the Treasury and its subsidiaries, the Bureau of Narcotics and Dangerous Drugs, and the F.B.I. and found that no electronic surveillance had been conducted. The *Beverly* court concluded that § 3504 was satisfied by the government attorney's affidavit containing the "conclusory statement" that an inquiry of "appropriate Federal Government agencies" revealed no electronic surveillance of the complaining party. While we noted that this affidavit in *Beverly* was "far from a 'model' either in terms of its scope or forthrightness," we rejected the witness's contention that the procedure followed in *Tierney*—an affidavit specifying by name the agencies checked, with the affiant subject to cross examination—was the *sine qua non* of an effective § 3504 denial. 468 F.2d at 744–45.

The appellant's reliance on *Tierney* and *Beverly* is clearly misplaced. A significant aspect of both those decisions is their failure to specify any indispensable ingredients of an effective § 3504 denial. While as in *Beverly*, the government's general and unsworn response may not be a "model", it is not necessarily fatally defective.

■ Since this court has not yet formulated precise standards for measuring the validity of a § 3504 response, we turn for guidance to the recent pronouncements of other circuits. Decisions in the First, Third and Ninth Circuits indicate that the imprecise language of § 3504 permits non-specific denials, especially when the party asserting illicit surveillance makes a general, unsubstantiated allegation of unlawfulness. In In re Mintzer, 511 F.2d 471 (1st Cir. 1975) [No. 74–1388, Dec. 26, 1974], the First Circuit rejected a grand jury witness's assertion that a valid § 3504 denial must be based on a thorough search of federal and state records to determine the possible existence of unlawful surveillance. According to that court,

[w]hile we think this, at least as to federal authorities, is a salutary practice, and may be mandated in other contexts, *see* Gelbard v. United States, 408 U.S. 41, 56 [92 S.Ct. 2357, 33 L.Ed.2d 179] (1972), we also think that at this proceeding all that can be required is that those conducting the grand jury proceeding affirm that they have no knowledge of and have not in any way employed other taps in formulating lines of inquiry or questions to be posed to the witness.

511 F.2d 472, n. 2. In United States v. D'Andrea, 495 F.2d 1170 (3d Cir. 1974), the Third Circuit sustained the government's *unsworn* denial after the witness had come forward "with no more than a bald accusation of illegality." 495 F.2d at 1174, n. 12. The Ninth Circuit decision in United States v. See, 505 F.2d 845 (9th Cir. 1974) adopts a fluid standard under which the adequacy of the government's denial depends on the specificity of the witness's allegation of illegality:

[B]ecause responding to ill-founded claims of electronic surveillance would place an awesome burden on the government, a claim of government electronic surveillance of a party must be sufficiently concrete and specific before the government's affirmance or denial must meet . . . [factual, unambiguous and unequivocal]. Accordingly, a general claim requires only a response appropriate to such a claim. . . .

The record discloses that the appellants' claim of electronic surveillance of them was vague to the point of being a fishing expedition. The government's response to the claim was more than adequate.

The Ninth Circuit's conclusion that a general allegation of illegality merits only a general denial is both logical and realistic. § 3504, even as discussed in *Gelbard, supra*, note 2, was never intended to permit a witness to thwart the

progress of grand jury proceedings by the mere conclusory and unsubstantiated assertion of illegal surveillance. A contrary conclusion could arm a recalcitrant witness with the capability to delay and impede legitimate grand jury investigations.

■ In the instant case, government counsel made forthright albeit unsworn oral and written denials of illegal surveillance. The written response was made at the direction of the court.[5] As we noted in *Beverly*, district courts must balance the right of witnesses to be free from unwarranted surveillance with the right of the government to operate grand juries in an effective manner; such courts must be given "wide latitude" in evaluating claims of unlawful surveillance. We conclude that the district court did not abuse its discretion in determining that the government's general denial, when viewed in context of Stevens' general and unsubstantiated assertions of illegality, satisfied § 3504.

■ We also sustain the validity of the subpoena ordering Stevens' appearance before the second grand jury. Stevens contends that the November 5 subpoena was ineffective since it related to a grand jury not in existence at the time of its issuance. The appellant misconceives the nature of a grand jury. It is not an independent, self-contained entity whose powers vanish when the jury's term expires. On the contrary, a grand jury is essentially an agency of the court, and exercises its powers under the authority and supervision of the court. As the Supreme Court stated in Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959):

A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid, because powerless itself to compel the testimony of witnesses. It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so.

359 U.S. at 49, 79 S.Ct. at 546, 3 L.Ed.2d at 616. *See also* Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960). *Cf.* Rule 17(a), F.R. Crim.P. As the power to summon witnesses before a grand jury ultimately emanates from the court itself, it is insignificant in the instant case that the subpoena was issued prior to the empanelling of the second grand jury.

Stevens' final contention on appeal is that the government improperly denied him the opportunity to inspect various documents relating to the validity of the Sklaroff wiretap.[6] The government responds that the legitimacy of that particular wiretap was established in a prior adjudication and that it may not now be relitigated.

■ Stevens inappropriately relies on In re Lochiatta, 497 F.2d 803 (1st Cir. 1974) for the proposition that a district court considering a § 1826 contempt citation may review the lawfulness of all relevant electronic surveillance. While this may be a legitimate proposition when a court is confronted with a claim of illegality of a wiretap for the first time, it is certainly not controlling in a situation where the validity of the sur-

---

5. The written denial was submitted to the court as a formal pleading. While the response was not a sworn affidavit, the government attorney who signed the denial was acting as an officer of the court and was bound by the requirements of Rule 11, Federal Rules of Civil Procedure:

The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed

for delay. . . . For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action.

6. The appellant argues that he should be entitled to examine the application of the Attorney General or his designate for the wiretap, the affidavits in support of the court order, the wiretap order itself, and an affidavit submitted by the government indicating the length of the time the surveillance was conducted.

veillance was established in a prior proceeding. In this case, Stevens seeks additional review of the legitimacy of the Sklaroff wiretap which has already been challenged and approved. In view of this, we need not further evaluate the merits of Stevens' allegation of invalidity. The mandate of this Court shall issue immediately.

Affirmed.