**In re James Frederick WEIR.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Frederick WEIR, Defendant-Appellant.**

**No. 75–2039.**

United States Court of Appeals, Ninth Circuit.

July 18, 1975.
Rehearing Denied Aug. 28, 1975.

James Brannigan, Sp. Atty. (argued), U. S. Dept. of Justice, San Diego, Cal., for plaintiff-appellee.

H. Peter Young (argued), Venice, Cal., for defendant-appellant.

## OPINION

Before KOELSCH, ELY and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

This appeal involves a contempt proceeding against James Frederick Weir, a grand jury witness. The prior history of the case is shown in *In Re Weir,* 377 F.Supp. 919 (S.D.Cal.1974) holding Weir in contempt, *aff'd, In Re Weir,* 495 F.2d 879 (9 Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974).

Pursuant to 28 U.S.C. § 1826, Weir was originally held in contempt for refusing to answer questions before a grand jury and the circuit affirmed on April 19, 1974 (citations *supra*).

On May 13, 1974, the term of the grand jury before which Weir had refused to answer questions ended. On May 28, 1974, Weir voluntarily accepted service of a subpoena for appearance before a new grand jury. On June 17, 1974, the district court stayed proceedings pending disposition of the petition for *certiorari.* The petition was denied by the Supreme Court on November 25, 1974.

In the prior proceeding the district court, on November 1, 1973, made a combination grant of immunity under ˋ18

U.S.C. §§ 6002 and 6003[1] and an order to testify under 28 U.S.C. § 1826.[2] It read as follows:

"Ordered that James Frederick Weir, in accordance with the provisions of § 6002 of Title 18, United States Code, shall testify *before the Grand Jury* of the United States, *and in all proceedings ancillary thereto and resulting therefrom,* and not be excused from testifying on the basis of his privilege of self-incrimination.

"However, no testimony or other information compelled under this order, or other information directly or indirectly derived from such testimony or other information, may be used against such witness in any criminal case except a prosecution for perjury for giving false statements or other-

---

1. 28 U.S.C. § 6002.

"§ 6002. Immunity generally

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) Either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House, and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

Added Pub.L. 91–452, Title II, § 201(a), Oct. 15, 1970, 84 Stat. 927.

28 U.S.C. § 6003.

"§ 6003. Court and grand jury proceedings

(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

Added Pub.L. 91–452, Title II, § 201(a), Oct. 15, 1970, 84 Stat. 927.

2. 28 U.S.C. § 1826.

"§ 1826. Recalcitrant witnesses

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal."

Added Pub.L. 91–452, Title III, § 301(a), Oct. 15, 1970, 84 Stat. 932.

wise failing to comply with this order." [3]

Subsequently, the trial court examined evidence presented to it *in camera* on November 1, 1973, and made the following order:

"It Is Hereby Ordered that, at any subsequent prosecution of James Frederick Weir, Jr., for or on account of any transaction, matter, or thing concerning which he testifies, the Government shall be limited in presenting its case to the use of the evidence presented to this Court *in camera* on November 1, 1973, and shall not be permitted to introduce evidence not then available to it."

Thereafter, the term of the grand jury before which Weir originally refused to testify expired on or about May 13, 1974. The new grand jury was impaneled on May 23, 1974. Weir, after accepting the subpoena to testify on May 28, 1974, appeared before a new grand jury on February 20, 1975 (following the denial of *certiorari* in the prior proceeding) and refused to answer questions identical to those he had been asked before the prior grand jury.

Weir was then brought back before the district judge and was ordered on March 27, 1975, to answer the particular questions before the grand jury. In order to save time it was stipulated that if he returned before the grand jury and the questions were asked, he would again refuse to answer them.

On that day, March 27, 1975, the district court held Weir in civil contempt, stayed execution of the order and released him on his own recognizance.

The appeal is from that order of contempt. Weir raises again various contentions he made in the first appeal. We need not discuss them since they were disposed of in our prior opinion (495 F.2d 879). In addition, he raises three additional questions: (1) Was it necessary to secure a new order to testify before the successor grand jury? (2) Was it necessary for the court to make a new order of immunity? (3) Was it necessary that the government show that the matter was again submitted to the Attorney General for his approval of the grant of immunity?

## DISCUSSION

### I.

*A New Order of Immunity Was Not Required*

The statute governing the procedure for an order for contempt of a recalcitrant witness, 28 U.S.C. § 1826(a), expressly provides that the sentence on the contempt of a witness refusing to answer questions before a grand jury (or a trial jury), after a grant of immunity, may not exceed eighteen months or the balance of the term of the grand jury before whom the witness refused to answer questions. Thus the particular grand jury involved is only important as its existence bears on the serving of the sentence imposed. There is no provision for a new order to testify before the successor grand jury nor any provision for a new grant of immunity.

Logically, it appears that the grant of immunity order would be perpetual in its operation. Prospective grants of immunity appear to be contemplated by 18 U.S.C. § 6003(a) and no time limits for completion of testimony are fixed therein.

There is no case law directly in point. In *United States v. Stevens,* 510 F.2d 1101 (5 Cir. 1975), a second contempt adjudication before a new grand jury was affirmed even though no new immunity order was obtained, but the issue was not discussed.

Furthermore, the court order granting immunity in the present case was not the order that Weir refused to obey. The immunity order merely supplanted Weir's Fifth Amendment rights to

---

**3.** The Order is dated November 1, 1973. It is marked filed September 27, 1973, obviously an error. The variance in dates is immaterial.

refuse to answer questions on the ground of self-incrimination. *Kastigar v. United States,* 406 U.S. 441, 442, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

The immunity order received its validity from the fact that the court issued it and not because any grand jury was in session. 18 U.S.C. § 6003(a).

Weir cites *United States v. Duncan,* 456 F.2d 1401 (9 Cir.), *rev'd on other grounds,* 409 U.S. 814, 93 S.Ct. 161, 34 L.Ed.2d 72 (1972), and *United States v. Hawkins,* 501 F.2d 1029 (9 Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). In *Duncan* the government secured a second immunity order prior to calling the witness before a successor grand jury. However, the issue was not litigated, the wording of the immunity orders is not set forth, and immunity was granted under a different statute, 18 U.S.C. § 2514. *Hawkins, supra,* merely held that "separate successive contempts are punishable as separate offenses." 501 F.2d at 1031. The case does not state whether successor grand juries were involved. Obviously it would make no difference.

No new immunity order was required and the contention to the contrary is without merit.

## II.

### *A New Order to Testify Was Not Necessary*

The original order of November 1, 1973, required Weir to testify "before the Grand Jury of the United States and in all proceedings ancillary thereto and resulting therefrom . . . ."

There is no case law bearing directly on the issue. Weir relies on dicta in *Yates v. United States,* 227 F.2d 844 (9 Cir. 1955). There the lower court continued Yate's imprisonment for contempt for refusing to answer certain questions before the trial court, *after the trial ended.* This court held that "[i]f the witness were ordered to testify or wished to testify, there is no body before which the testimony could be received." *Id.* at 847.

The panel's following remarks were dicta.

In *Stevens, supra,* the appellant contended ". . . the initial grand jury lacked authority to issue a subpoena compelling his appearance before a grand jury not yet impaneled." 510 F.2d at 1104. The court held, however: "We also sustain the validity of the subpoena ordering Stevens' appearance before the second grand jury. . . . The appellant misconceives the nature of a grand jury. . . ." *Id.* at 1106. The Stevens court then quoted from *Brown v. United States,* 359 U.S. 41, 49, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959):

> "A grand jury is . . . an appendage of the court . . . powerless itself to compel the testimony of witnesses. It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so." 510 F.2d at 1106.

*Stevens* then added:

> "As the power to summon witnesses before a grand jury ultimately emanates from the court itself, it is insignificant in the instant case that the subpoena was issued prior to the impanelling of the second grand jury." *Id.*

In *Stevens* no new order was requested, but this issue was not discussed. The attack was on the lack of a new subpoena.

In our case no complaint is made about the subpoena. The attack is made on the lack of a new order to testify. But we find the *Stevens* analysis persuasive with respect to our problem.

■ Finally, the government's action in going forward before the successor grand jury must be presumed lawful in the absence of clear evidence to the contrary. *Beverly v. United States,* 468 F.2d 732, 743–44 (5 Cir. 1972). *See also In Re Lopreato,* 511 F.2d 1150 (1 Cir. 1975).

## III.

### *Further Action by the Attorney General Was Not Necessary*

The Attorney General had authorized the grant of immunity under 18 U.S.C. § 6003 prior to the court's order of November 1, 1973. Weir contends that the government should be required to show that the Justice Department again reviewed the matter and followed its departmental guidelines before the witness was ordered to appear before the new grand jury. Weir cites no authority on point.

18 U.S.C. § 6003 provides that a United States Attorney may, with the approval of designated officials of the Department of Justice, request from the district court an order of immunity" . . . when in his judgment (1) the testimony or other information from such individual may be necessary to the public interest; and (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

█ The rules and orders of an Attorney General continue to govern the Department of Justice (notwithstanding the advent of new Attorneys General) until they are changed or altered. This is the customary way in which administrative agencies operate. When a determination has been made to compel the testimony of a witness, it borders on the frivolous to contend that after a witness has been held in contempt and then unsuccessfully appeals and seeks and is denied *certiorari*, the Department of Justice must again review its original decision before the witness can again be proceeded against.

"The guidelines on which appellants rely are directed to the handling of requests by United States Attorneys with-

in the Department of Justice for permission to seek orders granting immunity. They are not directed to the procedural or substantive rights of prospective witnesses." *In Re Tierney*, 465 F.2d 806, 813 (5 Cir. 1972), *cert. denied*, 410 U.S. 914, 93 S.Ct. 959, 35 L.Ed.2d 276 (1973); *Beverly v. United States, supra* (468 F.2d 732); *In Re Horn*, 458 F.2d 468, 473 (3 Cir. 1972).

## IV.

### *Weir Should Be Remanded to Custody*

█ Weir is at liberty under a stay order of the district court. The attempt to compel Weir's testimony began on June 14, 1973. He was first held in contempt on March 4, 1974. By his appeal and petition for *certiorari* while he was at liberty, he delayed the matter until the denial of *certiorari* on November 25, 1974.

Meanwhile, the time of the first grand jury expired on May 13, 1974. The new grand jury was impaneled on May 23, 1974. Its term will expire at the end of 18 months, about November 23, 1975. It is now June of 1975. Over a year of the new grand jury's term has run. After petitions for re-hearing and hearing en banc (if filed) are disposed of, a new petition for *certiorari* will undoubtedly be filed. The Supreme Court recesses about the end of June 1975 and no action on the *certiorari* petition can be expected until, at the earliest, October 1975, and possibly much later.

The statutory scheme for compelling testimony, 18 U.S.C. § 1826, contemplates confinement immediately after the contempt order and expeditious disposal of an appeal:

"Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal." [4]

---

4. In this case the notice of appeal was filed in the district court on April 8, 1975. Our clerk's office had no knowledge of the case until the record was received on April 29, 1975. Coun-

sel for Weir was duly billed for the docket fee. On May 9, 1975, the docket fee was received and the case docketed. The thirty-day period expired on May 8, 1975. Ordinarily a recalci-

An order committing Weir to custody is obviously in order. If he petitions for *certiorari,* he can seek release from a Justice of the Supreme Court. Such an application would be ruled on even though the Court was in recess.

The judgment holding Weir in civil contempt until he answers the questions posed to him before the grand jury is affirmed. The stay granted below is set aside and Weir is ordered into custody.

ELY, Circuit Judge (concurring):

I concur in the majority's disposition, but not without grave reservations.

On this appeal, Weir has contended that his refusal to answer the questions asked him by the grand jury was justified because the questions were based on a statement forced from him by torture in Mexico. He unsuccessfully presented the same claim to the majority of another panel of our court as he appealed his first judgment of contempt. *In re Weir,* 495 F.2d 879 (9th Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974) (hereinafter referred to as *"Weir I"*). As I interpret the majority's opinion in the present appeal, my Brothers Koelsch and Carter have considered Weir's arguments but have concluded to adhere to the majority opinion in *Weir I.*

Without intervention by our court sitting en banc, I am, of course, bound by the majority's holding in *Weir I.* Nevertheless, I wish to state that I wholly disagree with that holding, and it is difficult for me to accept the fact that the cogent reasoning of Judge Goodwin's *Weir I* dissent (495 F.2d at 881–82) was rejected. In my view, Weir's uncontradicted allegations that Mexican officers held his head under water until he lapsed into unconsciousness and that they also beat, stabbed, and hanged him in order to extract his statement raise serious questions touching due process and the "imperative of judicial integrity." *Elkins v. United States,* 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). *See United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); *United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974). Were it not for *Weir I,* I would here dissent, as vigorously as I could.

As to the majority's conclusion that the Government was not required to obtain a new immunity order before taking Weir before the second grand jury, I am somewhat *dubitante.* It is clear I think, that on the particular facts of this case, *Weir* could not reasonably have doubted that he would have been immunized had he testified before the second grand jury. He stipulated that he would continue to refuse to testify even after the District Court had clearly ruled that no new immunity order was necessary. Whether, as a matter of precedent, the Government should be required to obtain a new immunity order is, I believe, a question that turns wholly on policy considerations. As to that, the legislative history of the new immunity statutes is silent. If the Government were required to obtain a new order before taking a witness before a second grand jury, I suspect that potential witnesses might be better protected, at least to some extent, from conceivable attempts by local prosecutors to abuse the grand jury system. Futhermore, the Government might be better protected from unnecessary and improvident continuation of immunity granted to witnesses who have already refused to testify before earlier grand juries. Nevertheless, the majority has chosen its course, and since I cannot believe that Weir has suffered prejudice, I concur in the result that my Brothers have reached.

---

trant witness case is first brought to our clerk's attention by an application for bail. Here, Weir was on his own recognizance.

The panel was selected by lot and the case heard at the earliest date possible, June 11, 1975, due to the residence and commitments of the judges.