**In re GRAND JURY PROCEEDINGS.**

**Appeal of Jason David MEADOWS.**

No. 87–3572
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 9, 1987.

Michael Zelman, Miami, Fla., for appellant.

Barbara Schwartz, Asst. U.S. Atty., Tallahassee, Fla., for appellee.

Before VANCE, KRAVITCH and CLARK, Circuit Judges.

KRAVITCH, Circuit Judge:

This appeal concerns the legitimacy of a recalcitrant grand jury witness' incarceration under the district court's civil contempt power, 28 U.S.C. § 1826(a). The witness challenges the district court's order on the ground that the government's response to a claim of illegal electronic surveillance was not sufficient under 18 U.S.C. § 3504. We affirm the order of the district court.

## I. BACKGROUND

On July 22, 1987, the appellant, Jason David Meadows, was immunized pursuant to 18 U.S.C. § 6002 and compelled to testify before a grand jury. On that same day, Meadows refused to answer the grand jury's questions about a "Reynal Santana," and the government sought to hold the witness in contempt. Meadows responded with a motion for disclosure of electronic surveillance pursuant to 18 U.S.C. §§ 2515 and 3504, alleging that the government used illegal surveillance to determine whether he knew Santana. His motion contained a list of nine telephone numbers that he claimed "may have" been surveilled, the names of three of his attorneys whose conversations may have been illegally intercepted, and the statement that the surveillance occurred during 1986, up to and including the present. The basis for the motion was Meadows' affidavit, which states as follows:

I, JASON DAVID MEADOWS, am a witness who was called before a grand jury on July 22, 1987, regarding the above matter. Prior to July 22, 1987, I was interviewed by D.E.A. agent Brian McLauren [sic] in June or early July, 1987. During this interview Agent McLauren [sic] told me that he knew how much my lawyer, Michael Zelman, had been paid, and that "we do funny things with telephones."

At a hearing held on August 4, 1987, the prosecutor informed the court that none of the grand jury questions were derived from unlawful surveillance. To bolster this response, the government presented the testimony of DEA case agent McLaurin. On direct examination, McLaurin stated that there had been no electronic surveillance of any of the phone numbers or attorneys listed in Meadows' affidavit. Although he admitted telling the witness "we can do funny things with telephones" so that the witness would think the government knew more about the case than it actually did, McLaurin denied saying that he knew how much the witness' lawyer had been paid.

Although on cross-examination McLaurin admitted that he had received case information from other federal law enforcement agencies that use wiretapping, he stated that he would have known if electronic surveillance had been used in this case by any agency, and, according to him, there had been none. McLaurin supported this assertion by explaining that the case had been accepted by the Organized Crime and Drug Enforcement Task Force in Miami, consisting of all the federal agencies,[1] and that if a wiretap had been initiated pertaining to this case he, as case agent, would have been immediately notified. McLaurin admitted that he never actually checked the records of the other agencies, but was confident that the interagency notification sys-

---

1. McLaurin mentioned the United States Customs Service, the IRS, the FBI and the Marshal Service as some of the agencies forming the task force.

tem would have revealed any electronic surveillance in this case. The court, concluding that McLaurin's testimony was an adequate response to the claim of illegal electronic surveillance, found Meadows in contempt and remanded him to custody.

## II. DISCUSSION

■ Under 28 U.S.C. § 1826(a) the district court may hold a recalcitrant grand jury witness in contempt if his refusal to testify is without "just cause." A showing by the witness that the interrogation would be based upon the illegal interception of the witness' communications constitutes "just cause" precluding a finding of contempt. *Gelbard v. United States*, 408 U.S. 41, 46–52, 92 S.Ct. 2357, 2360–63, 33 L.Ed.2d 179 (1972). Section 3504 provides a mechanism by which a witness may try to demonstrate that the questions posed were derived from illegal electronic surveillance: "[U]pon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of [illegal interception] ..., the opponent of the claim shall affirm or deny the occurrence of the alleged" illegal surveillance. 18 U.S.C. § 3504(a)(1).

In this circuit, the adequacy of the government's denial of illegal electronic surveillance is dependent upon the specificity of the witness' claim of illegality. *In re Grand Jury Proceedings (Hermann)*, 664 F.2d 423, 427 (5th Cir. Unit B, Nov. 10, 1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).[2] The witness' claim of illegal surveillance may be so lacking in specificity that it does not even trigger the application of section 3504; a mere allegation that such surveillance "may" have occurred does not warrant any response from the government. *United States v. Tucker*, 526 F.2d 279, 282 (5th Cir.), *cert. denied*, 425 U.S. 958, 96 S.Ct. 1738, 48 L.Ed.2d 203 (1976);[3] *In re Baker*, 680 F.2d 721, 722 (11th Cir.1982). In order to trigger section 3504, the witness' claim must be a "positive statement that unlawful surveillance has taken place." *Tucker*, 526 F.2d at 282. However, even a "positive statement" may be so general and unsubstantiated that it does not warrant an extensive response from the government. *See United States v. Stevens*, 510 F.2d 1101, 1104, 1106 (5th Cir.1975) (government attorney's unsworn, goodfaith affidavit stating that no questions were based on electronic surveillance held adequate response to general and unsubstantiated claim of surveillance); *see also In re Grand Jury Proceedings (Brummit)*, 613 F.2d 62, 65 (5th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980).

Once a witness provides more than a general, unsubstantiated claim of illegal electronic surveillance, the government is required to give a more exacting response. This circuit's leading case in this area of the law, *In re Grand Jury Proceedings (Hermann)*, provides a good example of the sort of claim that mandates more than a simple denial of illegal activity. Hermann, a recalcitrant grand jury witness, supported his claim of illegal electronic surveillance with his own and his lawyer's affidavits indicating their belief that their conversations were being intercepted, a letter in which the FBI admitted that it found two references to Hermann in its Las Vegas indices, and documentation evidencing parallel federal and state investigations of the Church of Scientology, the focus of the grand jury investigation. 664 F.2d at 426. The court considered a two stage response to this claim. First, the government stated that searches by eleven potentially interested federal agencies, conducted one year earlier in response to a previous claim of illegal surveillance, had disclosed no evidence that Hermann or his lawyer had been monitored. *Id.* at 425. Second, the FBI case agent stated that since the time of the all agency check there had been no subse-

---

**2.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

**3.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

quent surveillance in the federal district where the grand jury was sitting, and, to his knowledge, no surveillance anywhere else. *Id.* at 426. The government also denied that the grand jury questions were in any way derived from any electronic surveillance. *Id.* The court held that the two replies together were sufficient to disclaim surveillance, but the second, standing alone, would not have been sufficient. *Id.* at 427, 428 n. 10.

The appellant argues that, under *Hermann,* the government's response to his claim was inadequate because McLaurin, like the FBI agent in *Hermann,* based his denial of illegal surveillance only on his personal knowledge and not on an all agency search. The appellant's argument, however, ignores the necessity of judging the adequacy of the government's response in relation to the specificity of the witness' claim. Because the appellant's claim of illegal surveillance was not as specific as the claim in *Hermann,* it does not warrant as extensive a response. Hermann supported his claim with affidavits, documentation of federal and state investigations, and most importantly, a letter from the FBI admitting that its Las Vegas files contained references to Hermann. In contrast, the only substantiation for appellant's claim is McLaurin's statement that "we can do funny things with telephones" and appellant's disputed testimony that McLaurin also said he knew how much appellant's attorney was being paid. Although this is sufficient to raise the appellant's claim above the level of a "mere allegation," it certainly is not as strong as the substantiation in *Hermann.* Without McLaurin's statement, appellant's claim that the government utilized electronic surveillance and that certain telephone numbers and attorneys *may* have been surveilled would barely be enough to even trigger the application of section 3504. The addition of one ambiguous statement to an otherwise minimal claim hardly requires the government to affirmatively search the records of all federal agencies in response. Instead, the government's reliance on the interagency notification system of the task force was adequate to dispel any suspicions of illegal surveillance raised by McLaurin's statement.

## III. CONCLUSION

We conclude that in light of the relatively unsubstantiated nature of the appellant's claim, the government's response was adequate under section 3504 to deny the occurrence of the alleged unlawful electronic surveillance. Thus, the appellant did not have "just cause" under section 1826(a) to refuse to answer the grand jury's questions and the district court's order holding the witness in contempt is AFFIRMED.